**UNITED STATES of America**

v.

**Martin Joseph McNICHOLAS, also known as Mario Perna,**
**and**
**Robert Kemp Pippin.**

**Crim. No. 24333.**

United States District Court
D. Maryland.

March 30, 1961.

Leon H. A. Pierson, U. S. Atty., and John R. Hargrove, Asst. U. S. Atty., Baltimore, Md., for plaintiff.

Martin Joseph McNicholas, pro se.

THOMSEN, Chief Judge.

On March 28, 1958, defendant Mc-Nicholas, represented by able court-ap-pointed counsel, entered a plea of guilty to an indictment charging bank robbery,[1] was sentenced to imprisonment for a period of twenty years, and is now con-fined in Alcatraz. He has filed a motion to vacate sentence,[2] alleging (1) that he "was mentally incompetent at the time of his plea of guilty and sentence due to the influence and the suffering of with-drawal symptoms from administration of a narcotic drug and was unable to in-telligently cooperate with his attorney in his defense", and (2) that he "would not have consented to the plea of guilty if he had not been under the influence of a narcotic drug at the time of his trial". His motion was accompanied by his affi-davit to the same effect.

A show cause order was entered, the government filed an answer, including ex-tracts from the testimony of McNicholas on two occasions in 1959 in connection with the motion for new trial in the case of United States v. Jones and Princeler, Criminal No. 24373, in this court, affirmed sub nom. Jones v. United States, 4 Cir., 279 F.2d 433. McNicholas filed a reply to the government's answer.

In reply to interrogatories propounded by the government, McNicholas stated that the drug was self-administered in the Baltimore City Jail daily during the period he was confined therein, from the date of commitment, February 14, 1958, up to and including March 27, 1958; that at the time of his commitment he was addicted to the use of opium; that "Prisoners Fitzgerald and Scordo (sic) who were confined to the Baltimore City Jail on occasion during the period * * saw the petitioner administer the drug", but could not swear that he was taking drugs although he informed them that the substance was cooked gum opium; and that "Petitioner disclosed to attorney William F. Mosner and Psychiatrist Man-fred S. Guttmacher that he was addicted to a narcotic drug while he was confined in the Baltimore City Jail."

This court held a hearing on March 2, 1961, at which the testimony of William

---

1. Under 18 U.S.C.A. § 2113 (a), (b), (d), (f).

2. Under 28 U.S.C.A. § 2255.

F. Mosner was taken and the report of Dr. Manfred S. Guttmacher, dated March 18, 1958, was filed with the Clerk.[3]

■ The bank was robbed on February 12, 1958. McNicholas was arrested, a preliminary hearing was held, and he was committed to the Baltimore City Jail in default of bail on February 14, 1958. Mr. Mosner was appointed to serve as his counsel, and on March 4, 1958, McNicholas, through his counsel, filed a motion in which he alleged that "doubt has arisen as to his legal mental capacity" to plead to the charges against him, and requested the court, pursuant to Rule 28, F.R.Crim.P., 18 U.S.C.A., to appoint a competent psychiatrist and such other persons as the court deemed proper to examine him and report on his mental capacity. McNicholas was examined on March 13, 1958, by Michael H. P. Finn, Ph. D., a clinical psychologist suggested by defendant's counsel, and on March 14, 1958, by Dr. Manfred S. Guttmacher, a psychiatrist, the Chief Medical Officer of the Supreme Bench of Baltimore City. Their reports were made available to counsel and to the court before arraignment. Dr. Guttmacher's conclusion, based on his examination and the psychological examination by Dr. Finn, was that McNicholas was "a fully responsible agent".[4] Dr. Finn's report did not suggest drug addiction or anything of that nature. Dr. Guttmacher's report of his interview with McNicholas on March 14,

1958, includes the statement: "He has never used marihuana nor any drugs".

Mr. Mosner testified on March 2, 1961, that he had interviewed McNicholas several times at the jail before the arraignment; that McNicholas had never told him that he (McNicholas) was addicted to a narcotic drug while he was confined in the Baltimore City Jail or at any other time; that at the time McNicholas appeared in court and entered his plea, he (counsel) did not observe anything which would lead him to believe that McNicholas was under the influence of a narcotic drug or suffering from withdrawal symptoms; that he was able to cooperate intelligently with counsel, and at all times lead counsel to believe that he was quite aware of what he was doing.

At the arraignment on March 28, 1958, counsel stated that McNicholas fully understood the charges against him; McNicholas himself entered his plea, saying "I have decided to plead guilty" on all counts. In reply to the court's questions he stated that he had received no promises or threats to induce him to plead guilty, that he was pleading guilty of his own free will, and with the knowledge that he might receive a substantial prison sentence. After counsel for the government had spoken, counsel for McNicholas spoke earnestly and well in his behalf, urging a relatively light sentence. In the course of the presentation Mosner stated that he had discussed the matter

3. Although McNicholas supplied no further information about the names or whereabouts of "Prisoners Fitzgerald and Scordo (sic)", I requested that the F.B.I. try to locate them and find out if they know anything about the matter. The F.B.I. was unable to locate Fitzgerald. They did locate a man named Scordo who had been in the jail while McNicholas was there and who remembers McNicholas as a man who attempted to escape from the jail, but says that he never saw McNicholas take or administer any kind of narcotics and never had any indication that McNicholas was in possession of narcotics.

4. Dr. Guttmacher stated: "This is a very interesting patient. On the sur-

face he is bright, cooperative, friendly, impulsive and heedless. He has big ambitions and intolerance for authoritarian figures.

"The psychological examination by Dr. Finn indicates that the patient may belong in the group of individuals who seek punishment for their antisocial attitudes and activities.

"This patient has a neurotic character structure. He is not, himself, aware of any need for psychiatric treatment. This Examiner feels that this young man is not psychotic and is a fully responsible agent. It would be highly impractical to consider the possibility of his getting psychiatric treatment outside of a maximum security institution."

at great length with his client before determining to enter a plea of guilty. McNicholas himself took the stand, made a statement, and answered various questions put to him by his counsel and by the court, stating lucidly and at length his reason for robbing the bank. For reasons stated in the record at the time I imposed a sentence of twenty years.

There was no indication whatever that defendant was under the influence of a drug or suffering from withdrawal symptoms, or that he was mentally incompetent or unable to cooperate intelligently with his counsel. On the contrary, he appeared alert, and his statements were clear and lucid.

McNicholas has admitted on several occasions that he committed the robbery for which he was sentenced; indeed, so far as I am aware, he has never denied his guilt. The idea of this motion was no doubt suggested to him by several reported opinions which he has cited in the papers he has filed and by his desire for another trip across the continent to Baltimore. In this connection it should be noted that on two occasions in the past he escaped from military confinement.

In Gravely v. United States, 4 Cir., 251 F.2d 360, 361, the Court quoted from Crowe v. United States, 4 Cir., 175 F.2d 799, 801, as follows: " 'Crowe complains because his production in court was not ordered: but the section under which the motion was made expressly provides; "A court may entertain and determine such motion without requiring the production of the prisoner at the hearing". * * * Only in very rare cases, we think, will it be found necessary for a court to order a prisoner produced for a hearing under 28 U.S.C.A. § 2255. Certainly, whether or not the court should require him to be brought into court for the hearing is a matter resting in the court's discretion. Production of the prisoner should not be ordered merely because he asks it, but only in those cases where the court is of opinion that his presence will aid the court in arriving at the truth of the matter involved.' " See also Barber v. United States, 4 Cir., 142 F.2d 805, 806, certiorari denied 322 U.S. 741, 64 S.Ct. 1054, 88 L.Ed. 1574.

McNicholas is not a trustworthy witness. See the comment on his testimony in Jones v. United States, supra, 279 F.2d at pages 434, 435, 436.

 In view of the entire record, especially the facts set out above in this opinion, I conclude that the presence of the defendant would not aid the court in arriving at the truth of the matter involved, and that it is not necessary to bring the defendant to Baltimore for a hearing.

*The motion is hereby denied.*

