UNITED STATES of America

v.

Julian David BROOKS.

No. Cr–39–S–63.

United States District Court
M. D. North Carolina,
Salisbury Division.

Sept. 20, 1963.

William H. Murdock, U. S. Atty., and R. Bruce White, Asst. U. S. Atty., for United States.

Plumides & Plumides, Charlotte, N. C., for defendant.

EDWIN M. STANLEY, Chief Judge.

On April 18, 1963, a jury found the defendant, Julian David Brooks, guilty on a two-count indictment charging violations of the Internal Revenue laws relating to distilled spirits. The first count charged the unlawful removal and concealment of twelve gallons of non-taxpaid distilled spirits on August 24, 1962, and the second count charged that on the same date the defendant possessed and sold twelve gallons of distilled spirits in containers which did not have affixed thereto stamps evidencing the payment of the tax. The defendant was sentenced to a period of imprisonment on the first count, and was given a suspended sentence and probation on the second count.

The defendant was represented at his trial by Richard L. Brown, Jr., Esquire, and Hobart Morton, Esquire, two experienced and able lawyers of the Albemarle, North Carolina, Bar. The attorneys were privately retained by the defendant.

Following the conviction and imposition of sentence, the defendant gave timely notice of appeal to the Court of Appeals for the Fourth Circuit, and the matter is now pending before that Court.

On August 6, 1963, more than three months after the trial, the defendant filed a motion for a new trial on the ground of newly discovered evidence, pursuant to Rule 33, Federal Rules of Criminal Procedure, 18 U.S.C.A. In substance, it is contended that the defendant learned for the first time during the trial that Charles Boler, Jr., the under-

cover agent who allegedly purchased twelve gallons of nontaxpaid distilled spirits from him on August 24, 1962, was accompanied by an informer, one Otis Knox; that Knox was not produced at the trial and was unknown to the defendant; that the defendant met Knox for the first time on June 29, 1963, at a state prison camp in or near Wadesboro, North Carolina, at which time Knox informed the defendant that he had not accompanied Agent Boler to the defendant's establishment on August 24, 1962, and had never seen, talked with, or transacted any business with the defendant in the company of Charles Boler or anyone else, in any manner whatever, prior to June 29, 1963. Attached to and made a part of the motion for a new trial were affidavits of Otis Knox, John G. Plumides, one of the defendant's present attorneys, Julian David Brooks, the defendant, and Warren Weingrad. All the affidavits tend to support, in all material respects, the allegations contained in the motion.

The motion was heard on September 5, 1963. At the opening of the hearing, the defendant's counsel, John G. Plumides, stated that the defendant desired to amend his motion and the various affidavits to show that the defendant had seen and talked with Otis Knox on an occasion prior to June 29, 1963, and that the error was occasioned by the fact that his brother and law partner, Michael G. Plumides, had drawn the motion and affidavits in his absence, and that the error had just been discovered. The court declined to permit the amendments. The only evidence offered by the defendant in support of his motion, in addition to the aforementioned affidavits, was the testimony of the defendant himself. He testified that sometime after his trial he visited Otis Knox at a state prison camp near Wadesboro, North Carolina, and that this was the first occasion he had ever seen Otis Knox; that Otis Knox told him at that time, in the presence of his brother and a prison guard, that he had never seen him before; that he next saw Knox on June 29, 1963, when he

again visited the prison camp accompanied by his attorney and some prison officials. On cross examination, the defendant stated that he first found out that Otis Knox was serving a state prison term while he was in jail immediately following his trial; that he visited Knox a month or two thereafter, and visited him a second time on June 29, 1963, when accompanied by his attorney and prison officials; that he read, signed and swore to an affidavit on July 25, 1963, which stated that " * * * he had never seen, talked with or transacted any business with Otis Knox in any manner whatsoever prior to June 29, 1963 * * *," but that this was wrong. His only explanation was that he did not pay any attention to the dates when he read the motion and affidavit. The defendant further testified that a short time before the hearing he learned that others had been to the prison camp and talked with Knox, and that he again tried to see him, but that Knox refused to talk with him; that he thereafter called the Sheriff of Stanly County to find out why Knox would not talk with him and if the Sheriff knew who was going to appear at the hearing; that on September 5, 1962, someone came to his place of business and wanted to purchase some whiskey, and that he could not be sure whether one of the individuals who visited him on that occasion was Otis Knox; that he had told his attorney that he did not know whether he had seen Knox on September 5, 1962, but gave no explanation as to why he filed an affidavit stating positively he had not seen Knox until after his trial, except that his attorney told him it would be all right and that it " * * * wouldn't make much difference. * * *"

The Government offered Otis Knox as a witness. He testified that he had been confined to a state prison camp near Wadesboro, North Carolina, since April 13, 1963, serving a state sentence; that in August of 1962 he accompanied Charles Boler, Jr., to the defendant's place of business and arranged for the purchase of two cases of nontaxpaid

whiskey from the defendant for $70.00; that the defendant told them to place the $70.00 on the bed after he had given them instructions as to where to pick up the whiskey; that as they started to leave and go get the whiskey the defendant stated they had only left $65.00 on the bed and that they were $5.00 short; that Agent Boler then gave him an additional $5.00 and he took that and placed it on the bed with the $65.00; that he and Boler then went to the place to which they were directed by the defendant and picked up the two cases of whiskey; that a short time later he again visited and talked with the defendant about whiskey transactions; that about a month after he was confined in state prison he saw and talked with the defendant and another person at the prison camp fence, after which they went into an office at the prison camp; that when they arrived in the office he told the defendant in the presence of others that he did not know him because people around his home had told him the defendant would kill him if he testified against him or tried to get him in trouble, and he was frightened because of what might happen to him; that the defendant told him if he obtained another trial and he would say that he had never seen him before, they " * * * would be friends from now on"; that the defendant returned later with his lawyer and he again stated that he did not know the defendant; that a short time later some person came with an affidavit for him to sign; that Federal agents had arranged for him to accompany Agent Boler to the defendant's establishment in August and September, 1962, in an effort to buy whiskey; and that on the September date the agents were concealed nearby and saw him and Boler talking to the defendant.

The Government also offered the testimony of Robert Martin, Special Investigator with the Alcohol and Tobacco Tax Division, who stated that he arranged for Knox and Agent Boler to go to the defendant's establishment on August 24, 1962, and September 5, 1962, and attempt to purchase some nontaxpaid

whiskey; that he saw Knox and Boler go to the defendant's establishment on September 5, 1962, and talk with the defendant; that on August 6, 1963, he visited Knox at a state prison camp near Wadesboro, North Carolina, at which time Knox told him that the defendant had been to see him on two occasions since his trial and stated that if he would testify that he did not know the defendant, " * * * they would still be friends"; that Knox told him that he had stated to the defendant and others that he did not know the defendant because he was afraid of what would happen to him.

The testimony given by witness Knox at the hearing concerning his dealings with the defendant on August 24, 1962, and September 5, 1962, is in complete accord with the testimony given by Agent Boler and the other Government witnesses at the trial. It is assumed that the Government did not arrange for Knox to testify for the reason that they were willing to rely upon the testimony of Agent Boler, an investigator with the North Carolina Alcoholic Beverage Control Board for more than four years, and who had been assigned to do the investigation by an investigator of the Alcohol and Tobacco Tax Division, and the further reason that Knox was in state custody at the time of the trial. In any event, there is not the slightest basis to find, or even suspect, that the Government intended to withhold any information favorable to the defendant. While the jury was being selected, the United States Attorney announced that Otis Knox would be a possible witness for the Government. Agent Boler identified Knox as his informer and testified concerning their association and their two visits to the defendant's establishment.

■ Normally, in a motion for a new trial based on newly discovered evidence, the movant must establish that the evidence was discovered since the trial; diligence on the part of the movant must be demonstrated; the evidence must not be merely cumulative or impeaching; the evidence must be material to the is-

sue involved; and it must be such that on a new trial the newly discovered evidence would probably produce an acquittal. Mills v. United States, 4 Cir., 281 F.2d 736 (1960).

In defense of the charges, the defendant offered a number of witnesses at the trial tending to establish that he was in the eastern part of the State on August 24, 1962, the date of the alleged offense, and by reason thereof could not have sold any whiskey to Agent Boler and his informer, Otis Knox. Even if the affidavit of Knox is accepted, and his testimony at the hearing is excluded, this would only tend to further establish the defendant's alibi. However, we need not belabor the point as to whether the defendant has technically met the requirements set out in the Mills case, because the court is convinced that there is no factual basis for the motion.

 After considering the motion and accompanying affidavits, the testimony of the defendant, and the testimony offered by the Government, and observing the demeanor of the witnesses upon the witness stand, and the admitted false statements in the affidavits attached to the motion, it is found as a fact that the defendant has been acquainted with Otis Knox since at least August 24, 1962, and that he at all times knew Knox had accompanied Agent Boler to his establishment on August 24, 1962, and again on September 5, 1962; that Knox stated that he had not accompanied Agent Boler to the defendant's establishment on August 24, 1962, or at any other time, through fear that the defendant would cause him bodily harm; that if Knox had been called as a Government witness at the trial he would have corroborated Agent Boler and the other Government witnesses in every material respect; that Knox in truth and in fact did accompany Agent Boler to the defendant's establishment on August 24, 1962, and again on September 5, 1962, and did participate in the illicit whiskey transactions referred to in the bill of indictment; that if a new trial should be granted, the evidence of guilt of the defendant would be even more overwhelming than it was at the first trial; that the defendant has totally failed to demonstrate that there is any evidence available to him, newly discovered or otherwise, that would probably produce an acquittal; and that all the evidence offered by the defendant in support of his motion for a new trial is totally incredible and unworthy of belief. Under these circumstances, the defendant's motion for a new trial must be denied upon authority of United States v. Johnson, 327 U.S. 106, 66 S.Ct. 464, 90 L.Ed. 562 (1946); Jones v. United States, 4 Cir., 279 F.2d 433 (1960), and United States v. Gantt, 4 Cir., 298 F.2d 21 (1962).