**UNITED STATES of America,
Appellee,**

**v.**

**Carroll MADDOX, Appellant.
No. 846, Docket 35619.**

United States Court of Appeals,
Second Circuit.

Argued April 15, 1971.

Decided June 14, 1971.

James P. Tierney, John W. Nields, Jr., Asst. U. S. Attys., Whitney North Seymour, Jr., U. S. Atty., for appellee.

Richard Owen, Owen & Turchin, New York City, for appellant.

Before WATERMAN, SMITH and KAUFMAN, Circuit Judges.

WATERMAN, Circuit Judge:

Appellant Carroll Maddox was convicted after a three-day jury trial of bank robbery in violation of 18 U.S.C. § 2113. On this appeal he claims error in the admission of certain hearsay statements, in the questioning of one prosecution witness, and in the denial of a new trial on the basis of new evidence. For the reasons set forth below, we affirm.

On February 27, 1969, the Manufacturers Hanover Trust Company in the Bronx, New York City, was robbed of $25,000 by three men. In September 1969 Lawrence Eddington and Robert Armstrong were arrested in connection with that robbery, and subsequently both men pleaded guilty to the offense. Both Eddington and Armstrong told the FBI that the third robber was one Walter Johnson. In February 1970 Eddington and Armstrong attempted a jail break from the West Street Detention Center, but Eddington fell through the roof and was permanently crippled. After this attempted break, Eddington changed his story and named Maddox, who lived in Baltimore, as the third robber and stated that Maddox had received $8,000 of the proceeds of the robbery.

At Maddox's trial Eddington testified for the Government. In addition, the branch manager of the bank testified that the third robber, like Maddox, had a pock-marked face. The Government also introduced evidence that Maddox's income was limited, but that shortly after the robbery the Maddox family had had expenditures totaling $1700, and Mr. and Mrs. Maddox had taken a pleasure trip to the Virgin Islands.

At trial Maddox denied any participation in the robbery. Both Maddox and his wife testified that on the day of the robbery, a payday for Mrs. Maddox, they were in Baltimore doing their weekly shopping. They also testified concerning the expenditures of $1700: Mrs. Maddox had made a $100 down payment on a ring, incurring finance charges on the remainder; the following day $600 was paid toward carpeting; a week later Maddox made a $500 down payment on a used car, again incurring finance charges; the same day, Mrs. Maddox made a $500 deposit in a savings account. The trip to the Virgin Islands was financed by a $500 loan from a bank, a loan apparently conceded by the prosecution, plus Mrs. Maddox's vacation pay. It is also undisputed that approximately nine months before the robbery, Mrs. Maddox had received $1900 in a settlement of an accident claim and Mrs. Maddox testified that

this settlement money was the source of the down payments on the ring, the carpeting, and the used car.

To show a motive for Eddington's damaging testimony, Mrs. Maddox testified that she had rebuffed persistent advances by Eddington in 1968 and that Maddox had "told off" Eddington when he found out about Eddington's overtures to his wife. Since that time there had been much friction between Eddington and Maddox, who had formerly been close friends. Defense counsel also posed the possibility that, inasmuch as Walter Johnson had never been apprehended and because Eddington faced the possibility of a stiffer sentence after his attempted pre-sentence jail break from the detention center, Eddington thought that he might obtain leniency by naming as the third robber a person whom the FBI could easily apprehend.

On this appeal Maddox's first claim of error is that his credibility was improperly impeached by a medical record from the West Street detention center. While on the stand Maddox testified that he had formerly used narcotics [1] but that his last indulgence was in 1957. On cross-examination he was asked whether he had not told medical examiners at West Street after his arrest that his last indulgence in heroin was in the latter part of 1969. Maddox denied making such a statement. On rebuttal, the prosecution entered into evidence an "Out-patient Record" [2] containing Maddox's responses to routine medical and personal questions asked of all inmates upon admission to West Street. The record was completed by a fellow inmate under the supervision of a medical technician. One of these routine questions concerned

an inquiry into the entering inmate's use of narcotics, apparently asked both for classification purposes and to ready West Street personnel for treatment of those inmates who might undergo withdrawal symptoms. Maddox's Out-patient Record bore the notation "States that his last indulgence of heroin was during latter part of 1969." Maddox contends that this record was inadmissible hearsay and, in the alternative, that, even if not hearsay, it was inadmissible as it was an admission made while in custody when no *Miranda* warnings had been first given.

■ On the hearsay issue the Government argues that the Out-patient Record was admissible under 28 U.S.C. § 1732 as a business record. Maddox, relying on Judge Learned Hand's opinion in United States v. Grayson, 166 F. 2d 863 (2 Cir. 1948), contends that the record was admissible as a business record only if the declarant (Maddox) and the entrant were both under a business duty in the regular course of business to record the information which was sought to be introduced. However, as recognized in Felice v. Long Island Railroad Company, 426 F.2d 192, 196–197 (2 Cir.), cert. denied, 400 U.S. 820, 91 S.Ct. 37, 27 L.Ed.2d 47 (1970), the *Grayson* opinion dealt only with one form of multiple hearsay:

> Aside from the situation referred to by Judge Hand, where each declarant was under a business duty to make his report to the next declarant or the ultimate recorder, "multiple hearsay" for which the business record is the last level is admissible if each prior level falls within a recognized exception to the hearsay rule.

---

1. Maddox had a prior narcotics conviction. In addition, the defense anticipated that the prosecution was going to urge that the motive for the robbery was the need to support an expensive drug habit. In summation, the prosecution did in fact advance Maddox's use of drugs as a motive for the robbery.

2. The name on the Out-patient Record was "Walter Johnson," and the date on

the record (March 31, 1970) does not agree with the fact that Maddox was admitted to the West Street detention center in February 1970. The first discrepancy was explained on the grounds that Maddox had been arrested on a bench warrant under Johnson's name. In any event, despite the apparent late-dating of the record, trial counsel did not question that the record was indeed Maddox's medical history card.

See also Rule 805, Proposed Rules of Evidence of the United States Courts and Magistrates (revised draft 1971) (51 F.R.D. 315). It is apparent that Maddox was under no business duty to report his use of narcotics to the recording inmate and that Maddox's alleged statement was not actually relevant to any treatment he was going to receive at the West Street detention center. However, such objections go only to the first step in the hearsay chain and not to the ultimate business record exception. There appears to be no question but that the Out-patient Record was made in the normal course of business at the detention center and that the recording inmate was under a business duty to accurately record the responses of incoming prisoners. The fact that an inmate made the record under a medical technician's supervision instead of the technician making the record himself goes only to the weight of the evidence. Gaussen v. United Fruit Company, 412 F.2d 72, 73 (2 Cir. 1969).

If the recording inmate had testified at trial, it is clear that his testimony would have been admissible to show an admission by Maddox or to impeach Maddox by a prior inconsistent statement. Thus, both steps in the hearsay chain fall within the recognized exceptions to the hearsay rule, and the Out-patient Record was admissible, at least insofar as concerns traditional hearsay objections.

■ Maddox's alternative claim that the record was inadmissible because he was not given any *Miranda* warnings is resolved by the Supreme Court's recent decision in Harris v. New York, 401 U. S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). Here the Out-patient Record was introduced on rebuttal to contradict testimony given by Maddox at trial, and the holding in *Harris* fully applies here.

■ Appellant's second contention is that irrelevant and inflammatory testimony was elicited from a prosecution witness, one Palmisano, and that an FBI report was improperly revealed in "jog-ging" Palmisano's memory. Palmisano testified that he had rented garage space to Maddox for over four years but that Maddox seldom paid his rent. During Palmisano's testimony it came out that he had had an eye operation which had left him virtually blind. In response to one of the prosecution's questions, Palmisano answered:

"* * * the only thing I was upset about was that I should have been able to collect some rent since I had this trouble with my eyes. I needed all the money I could possibly get my hands on and I feel that if he [Maddox] could afford to take trips—"

Upon objection by defense counsel the latter part of this testimony was stricken. However, Maddox's alleged failure to pay rent to a needy blind man remained in the record. While this was concededly emotionally prejudicial to Maddox, Palmisano's testimony was highly relevant to the state of Maddox's finances, and Palmisano's near blindness would have been apparent to the jury under any circumstances.

■ The prosecution also asked Palmisano whether Maddox had spoken to him about taking trips to New York. Palmisano answered in the negative, and the prosecution expressed surprise. Thereupon, in the presence of the jury, the prosecutor was allowed to "refresh" Palmisano's memory by reading aloud (because of Palmisano's eye condition) the contents of an FBI record that stated that Palmisano had had conversations with Maddox about trips to New York. By this means Palmisano's memory was "refreshed," and he changed his prior denial. Although the better method of refreshing the memory of a blind witness would be to excuse the jury first, there was no prejudice to the defendant here inasmuch as Palmisano adopted his earlier statements to the FBI as his trial testimony.

Maddox lastly contends that, after his conviction, the trial court should have granted him a new trial on the basis of newly available evidence. At trial Arm-

strong, the second robber, was called by the prosecution, but refused to take the oath because he would not be "a witness for the United States Attorney." The jury was excused, and Armstrong indicated that he might wish to withdraw his guilty plea to the robbery and to assert a Fifth Amendment privilege. Accordingly, Armstrong was excused as a witness. After Maddox's trial Armstrong was sentenced on his guilty plea. Maddox later discovered that if Armstrong had been forced to testify Armstrong would have adhered to his original story that a Walter Johnson was the third robber. Defense counsel did not respond to Maddox's request that he petition for a new trial, and Maddox wrote directly to the trial judge. A hearing was held on this pro se motion for a new trial, and at that hearing Armstrong testified that Walter Johnson was the third robber and not Carroll Maddox. The trial judge denied the motion on the grounds that Armstrong's testimony was not new evidence, and that, anyway, Armstrong's testimony was unworthy of belief.

■■ Inasmuch as Armstrong's testimony was unavailable at Maddox's trial because of Armstrong's Fifth Amendment privilege, we are hesitant to say that Armstrong's testimony was not new evidence. However, it is clear that the trial judge, in deciding a motion for a new trial on the basis of new evidence, has broad discretion in deciding whether the new evidence is credible. United States v. Johnson, 327 U.S 106, 111–112, 66 S.Ct. 464, 90 L.Ed. 562 (1946); Jones v. United States, 279 F.2d 433 (4 Cir.), cert. denied sub nom. Princeler v. United States, 364 U.S. 893, 81 S.Ct. 226, 5 L.Ed.2d 190 (1960); Connelly v. United States, 271 F.2d 333 (8 Cir. 1959), cert. denied, Caudle v. United States, 362 U.S. 936, 80 S.Ct. 755, 4 L. Ed.2d 750 (1960); United States v. On Lee, 201 F.2d 722 (2 Cir.), cert. denied, 345 U.S. 936, 73 S.Ct. 798, 97 L.Ed. 1364 (1953). While we fail to understand why robber Armstrong's proffered testimony after trial is less worthy of belief

than robber Eddington's at trial, we cannot say that the trial judge's decision on the motion for a new trial is an abuse of the discretion wisely granted to trial judges.

The judgment of conviction is affirmed.