STATE of Maine

v.

Gregory R. GAGNE and Daniel J. Murphy.

Supreme Judicial Court of Maine.

Dec. 12, 1975.

Donald H. Marden, County Atty., Augusta, for plaintiff.

Wathen & Wathen by Daniel E. Wathen, Jessie H. Briggs, Augusta, Alan C. Sherman, Robert J. Ringer, Jr., Waterville, for defendants.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, ARCHIBALD, and DELAHANTY, JJ.

DELAHANTY, Justice.

The Kennebec County Grand Jury returned separate indictments against Gregory R. Gagne and Daniel J. Murphy charging each defendant with the crimes of high and aggravated assault[1] and robbery.[2] The cases were consolidated for trial. From a jury verdict finding each of them guilty of both offenses, the defendants have appealed, and their appeals have been consolidated for appellate review. We deny each appeal.

The jury could have found the following material facts:

The prosecutrix was living alone with her young daughter in a basement apartment in Augusta. Her husband was a full-time patient at the United States Veterans Administration Hospital at Togus. At about 1:00 a. m. on December 29, 1972, the prosecutrix was awakened by a knocking on her kitchen door. She got out of bed and, clad in her nightgown, went to the door to see who was there. As she opened the door slightly, three men, all strangers to the prosecutrix, forced their way into the apartment. The prosecutrix subsequently identified the three intruders as the defendants Gagne and Murphy, and one Robert Gove.

Gagne, Murphy and Gove crowded around their prey, kissing her and rudely fondling various parts of her body. These minatory intrusions upon the person of the prosecutrix continued for a brief time over her objections, and a discussion ensued among the three men as to which of them would go to bed with her. Gagne eventually succeeded in pushing the prosecutrix into the bedroom, threatening as he did so

1. 17 M.R.S.A. § 201.

2. 17 M.R.S.A. § 3401.

to kill her and her daughter if she not submit to his inordinate desires. Gagne forced the prosecutrix onto the bed and jumped on top her as Gove and Murphy took positions at either side of the bed. When the prosecutrix resisted Gagne, Murphy brandished a straight razor in her face and said "let me cut her." Before any act of intercourse took place, however, Gagne desisted, at least in part at Gove's urging, and got off the prosecutrix and out of the bed.

As the three men and the prosecutrix moved from the bedroom into the living room, Murhpy asked her if she had any money or "dope." She replied that she had neither, to which Murphy responded, "I know you've got money. If you don't give it to us, we'll tear the whole apartment apart, and we'll kill you and your daughter, and we'll find it one way or another." Gagne made a similar threat. The prosecutrix managed to find fifteen dollars in her coat, and she handed the money to Gove as Gagne and Murphy looked on. The intruders then left the apartment, warning the victim to lie down on her bed and remain there until she heard their car depart.

After the jury convicted Gagne and Murphy of high and aggravated asault and robbery the defendant Gagne moved, pursuant to M.R.Crim.P. 33, for a new trial on the ground of newly discovered evidence. The presiding Justice, after conducting an extensive hearing, denied the motion.

■ The defendants' appeals raise points I through III in common. Gagne separately assigns point IV,[3] while Murphy separately asserts points V through VIII. Mindful of these points on appeal, we have *organized our opinion as follows*:

I. Error of the trial court in submitting to the jury the dual issues of high and aggravated assault and robbery.

II. Denial of a mistrial on the ground of prejudicial conduct by the prosecutrix.

III. Denial of motions for acquittal on one or both charges.

IV. Denial of a new trial on the ground of newly discovered evidence.

V. Prejudicial effect upon the jury of the disclosure that the indictment bears the words "A True Bill."

VI. Denial of a mistrial on the ground of disclosure by a juror that she was a friend of the prosecutrix.

VII. Prejudicial attitude of the presiding Justice.

VIII. Restriction on the right to cross-examine the prosecutrix.

I.

■ The defendants assert that the jury should not have been permitted to find them guilty of high and aggravated asault *as well as* robbery. The basis of this argument is that each of the defendants is being punished twice for a single underlying offense. It is alleged that the jury's verdicts finding Gagne and Murphy guilty of high and aggravated assault rest on the identical facts as the verdicts of guilty on the robbery charge. The defendants attempt to bolster their position by postulating that high and aggravated assault is a lesser included offense of robbery and it follows, they argue, that they should not have been convicted of high and aggravated assault *and* robbery on the same facts.

This contention was first brought to the attention of the presiding Justice before

3. Although Murphy attempts to join in this issue on appeal, the record clearly reflects that only Gagne moved for a new trial. Since Murphy failed to request a new trial in the court below, this Court will not entertain his inopportune plea that he should have been granted a second trial.

the jury had been empanelled, when the defendants moved unsuccessfully that they should be tried on *either* high and aggravated assault, *or* robbery, but not on both offenses.[4] The Justice commented at that time, "I'll face up to whether or not they can be found guilty of both offenses when we reach it."

The defendants failed to resurrect this issue as they should have done either by requesting a limiting instruction or making a timely objection to the court's charge. M.R.Crim.P. 30(b). The defendants thus afforded the presiding Justice no opportunity to make a definitive ruling on their argument, and our review will be limited to determining whether the assigned error was an obvious error affecting substantial rights of the defendants. M.R.Crim.P. 52(b); *State v. Armstrong,* Me., 344 A.2d 42, 49 (1975).

The adequacy of the court's instructions to the jury is tested by considering the charge in its entirety. *Id.* at 47; *State v. Palumbo,* Me., 327 A.2d 613, 616 (1974). We find that the charge separately and completely detailed for the jury the legal elements of both high and aggravated assault and robbery. The jury was presented with the alternatives of finding either defendant guilty or not guilty of one or both of the offenses charged.

Turning to the facts on which the verdicts were predicated, the jury was clearly warranted in finding that Gagne committed an assault of a high and aggravated nature when he threatened to kill the prosecutrix if she resisted his coarse sexual advances.[5] The jury was similarly justified in concluding that Murphy assaulted the victim in a high and aggravated manner when he threatened to "cut" her with a straight razor.

The events which gave rise to the defendants' robbery convictions occurred subsequent to the assaults. After the prosecutrix and the defendants left the bedroom and returned to the living room, first Murphy and then Gagne demanded money from her in an obviously threatening manner, and she complied by handing fifteen dollars to the defendants' accomplice. These are the facts which constituted the robbery, and it is readily apparent that they are separate and distinct from those earlier occurrences which the jury saw fit to condemn as high and aggravated assaults.

There is ample evidence present in the record of this case to support the jury's verdicts finding each defendant guilty of both crimes. The defendants' assertion that they were convicted twice for the same underlying offense is simply not borne out. The presiding Justice put two basic issues before the jury: whether the defendants were guilty of high and aggravated assaults, and whether they were guilty of robbery. The defendants have not been punished twice for a single offense.

In the context of the evidence we need not consider the questions of whether, or under what circumstances, high and aggravated assault is a lesser included offense of robbery. In light of the defendants' failure to request a limiting instruction or otherwise object to the court's charge in compliance with Rule 30(b) M.R.Crim.P., we simply hold, under Rule 52(b) M.R. Crim.P., that the defendants suffered no manifest injustice from this belatedly alleged error. *State v. Scott,* Me., 343 A.2d 177, 178 (1975).

---

4. M.R.Crim.P. 13 provides that two or more indictments may be consolidated for trial if the offenses could originally have been joined in a single indictment under M.R.Crim.P. 8(a).

5. In *State v. Smith,* Me., 306 A.2d 5, 7 (1973), we indicated that the determination of whether an assault and battery is to be considered "high and aggravated" is best made on a case by case basis. This approach is equally applicable when, as here, only an assault is charged.

## II.

■ During the presentation of the State's case, the defendants moved for a mistrial on the ground that, after the prosecutrix was excused from the witness stand, she was allegedly seen to embrace her husband in the rear of the courtroom. It is claimed that this emotional manifestation unduly incited the sympathy of the jury.

A court presiding over a criminal trial must exercise its own judgment when ruling on a motion for a mistrial. This is a matter within judicial discretion, *State v. Hachey,* Me., 278 A.2d 397, 403 (1971). But such a motion should be granted only when taking all the circumstances into consideration there is an urgent, manifest and imperious necessity mandating a mistrial in the furtherance of justice. *State v. Michaud,* Me., 244 A.2d 801, 802 (1968). No abuse of discretion is shown here.

The presiding Justice was present and could better judge whether the incident would be likely to adversely affect the defendants than may this Court from the cold stark pages of the record or the assertions of counsel by way of oral argument. *Gregory v. Perry,* 126 Me. 99, 100, 136 A. 354 (1927).

Other brief displays of emotion emitted by the victim while she was seated in the rear of the courtroom during trial were made subject of additional motions for mistrial. Though the motions were arguably withdrawn when the court expressed willingness to inquire of the jurors whether they "observed any mannerisms or actions which particularly attracted your attention," the issue was briefed and argued on appeal.

During a bench colloquy with counsel concerning the victim's demeanor, the presiding Justice stated that he "watched her closely" and the victim was noted to "grimace once or twice." He added, "I noticed the jury have been looking right in the direction of me and the witnesses at all times." The presiding Justice was obviously well aware of all of the activity within the courtroom and his denial of the motion for mistrial was a bona fide exercise of judicial discretion.[6]

## III.

■ The defendants moved for judgments of acquittal pursuant to Rule 29(a) M.R.Crim.P. at the close of all the evidence, renewing the motions which they had made, without success, at the close of the State's case. The motions were again denied by the presiding Justice. Considering all the evidence in the case, there was legally sufficient evidence to support the guilty verdicts. *State v. Jackson,* Me., 331 A.2d 361, 364 (1975); *State v. Brewer,* Me., 325 A.2d 26, 27 (1974).

Both defendants took the witness stand and proffered incredibly innocent explanations for their conduct. However, the jury by its verdicts quite properly chose to believe the prosecutrix's account of what took place in her apartment during the early morning hours of December 29, 1972. It is the province of the jury to assess the credibility of witnesses, and, once the jury resolved the credibility issue in favor of the prosecutrix, the evidence was plainly sufficient to warrant the convictions. As we pointed out in *State v. Trask,* Me., 223 A.2d 823, 825 (1966), "Proof beyond a reasonable doubt may rest upon the testimony of a single witness."

The motions for judgments of acquittal were correctly denied.

## IV.

■ On the sixth day after the presiding Justice sentenced him on both of the

---

**6.** Gagne's claim that he was thwarted by the presiding Justice in his effort to make an offer of proof on this subject is wholly without merit.

guilty verdicts, Gagne filed a motion for a new trial on the ground of newly discovered evidence, alleging that a witness, Joseph Wenckus, would testify that he had heard the prosecutrix state prior to trial, in direct contradiction to her testimony at trial, that the three men who entered her apartment on December 29, 1972, took marijuana from her, but not money. Gagne urged that this evidence was vital to his defense, could not have been discovered earlier, and would "probably" have changed the result if it had been presented to the jury.

The court convened a hearing on Gagne's motion and heard Wenckus's testimony. Five witnesses, including the prosecutrix, were called by the State in rebuttal. At the close of the hearing, the presiding Justice denied Gagne's motion for a new trial. The court doubted Wenckus's credibility,[7] referring to him as an "unstable person," and furthermore observed that the witness's testimony was essentially cumulative. The Justice concluded, "I can't conceive how I could possibly say that [Wenckus's testimony] . . . would have probably resulted in a different verdict."

This Court has consistently adhered to the view that a motion for a new trial on the ground of newly discovered evidence is regarded with disfavor, and the evidence in support of the motion must be convincing. *State v. O'Clair,* Me., 292 A.2d 186, 197 (1972). Moreover, "The weight and credibility to be attached to the newly discovered evidence is for the Superior Court Justice and the issue on appeal is whether his decision was clearly wrong." *Id.* We are in complete agreement with the trial court's evaluation of Wenckus's testimony, and we have no hesitation in holding that the Justice appropriately exercised his discretion by denying Gagne's motion for a new trial.

## V.

Defendant Murphy's claim that the jury was prejudiced against him because the endorsement "A True Bill" which appeared at the end of the indictments was brought to the attention of the jurors during the reading of the indictments at the commencement of the trial was withdrawn at oral argument. This precise issue was decided adversely to the defendant in *State v. Brown,* Me., 321 A. 2d 478, 485–86 (1974). There was no error.

## VI.

Murphy contests the denial of his motion for a mistrial after one of the twelve jurors brought to the court's attention, shortly after the trial began, the fact that she had at one time been acquainted with the prosecutrix. Immediately after receiving this information, the presiding Justice conducted a thorough *in camera* voir dire of the particular juror, and determined to a certainty that the juror had not disclosed her relationship with the prosecutrix to the other members of the jury. The juror in question was excused and one of the alternates substituted in her place, and the Justice explained to the remaining original members that one of their number had been excused for good cause. Against this procedural background, the defendant's argument that he should have been granted a mistrial is wholly unconvincing. As we observed earlier in this opinion, whether to grant a mistrial is a determination which is left to the discretion of the trial court. There was no abuse of discretion in the denied of the instant motion. *Hachey,* supra.

## VII.

In another effort to reverse the judgment of the trial court, the defendant Murphy baldly asserts that he was denied a

---

7. Wenckus admitted to a rather extensive involvement in illicit and tranquillizing drugs. He stated at one point, "I know that sometimes my mind is really messed up," and at another, "my nerves were shot from taking hard drugs," and at another, "I can't think straight."

fair trial because of the "prejudicial attitude" of the presiding Justice. The defendant took no timely action to raise this issue at the trial stage by objecting to the court's supposed intrusions on his rights, and his argument on appeal does no more than refer us to pages in the trial transcript which purport to illustrate his allegations. "Where no objection is made at the time to judicial language or conduct thought to be prejudicial to the rights of the accused so that corrective measures may be adopted to remedy the situation or protect the defendant against unfavorable inferences, this Court will not consider the alleged error on appeal and grant a new trial except in circumstances where the error at trial was so highly prejudicial and calculated to result in injustice that an unjust verdict would inevitably result or when it is apparent from a review of all the record that the accused has not had the impartial trial to which under the law he is entitled." *State v. Rowe,* Me., 238 A.2d 217, 225 (1968).

We take note of this assignment of error since the integrity of the judgment is impugned by Murphy, testing as he does, the fairness and impartiality of the presiding Justice and raising the thinly-veiled suggestion that the aura of "prejudicial attitude" was so persuasive as to taint the outcome of the trial. This Court, commenting upon the role of a trial Justice in *Hughes v. Black,* 156 Me. 69, 73, 160 A.2d 113, 115 (1960), said:

> A cardinal principle inherent in American jurisprudence is that no judge shall preside in a case in which he is not wholly free, disinterested, impartial, and independent, to the end that litigants may have a hearing or determination by an impartial tribunal. . . . Due process of law requires a hearing before an impartial and disinterested tribunal. Next in importance to the duty of rendering a righteous judgment is that of doing it in such a manner as will beget no suspicion of the fairness and integrity of the judge.

The record of the proceedings makes manifest that the trial was moderated with the utmost discipline and deference, not alone to Murphy, but to his co-defendant Gagne as well. The trial Justice meticulously refrained from creating even an appearance of improper interference with the cause of justice. The Justice met the precepts of *Hughes,* supra. The seventh assignment of error is wholly without merit.

## VIII.

■ Finally, Murphy takes the position that he was prejudiced because the court prohibited him from fully cross-examining the prosecutrix. The instance of which Murphy complains occurred when his counsel, on cross-examination of the prosecutrix, asked her whether she was living alone in her apartment at the time the crimes were committed. The court sustained the State's objection to the question. We note that the defendant failed to make an offer of proof which might have apprised the presiding Justice of the relevance of the proposed testimony. See *State v. Gervais,* Me., 317 A.2d 796, 803 (1974). The probative value of evidence as to the company kept by the prosecutrix would have been minimal at very best, and in any event would have been outweighed by its tendency to distract the jury. "The ruling of the presiding Justice was a legitimate exercise of his discretion to confine the cross-examination within appropriate limits." *State v. Clapp,* Me., 335 A.2d 897, 903 (1975).

None of the grounds urged by the defendants either jointly or severally, is a reason for reversal. As to each defendant, the entry is:

Appeal denied.

All Justices concurring.

WERNICK, J., did not sit.