STATE of Maine

v.

George ARNOLD, Jr.

Supreme Judicial Court of Maine.

Argued June 17, 1981.

Decided Aug. 24, 1981.

---

David W. Crook, Dist. Atty., Douglas Clapp, Paul D. Mathews, Asst. Dist. Attys. (orally), Skowhegan, for plaintiff.

Perkins, Townsend & Shay, P.A., Warren C. Shay (orally), Skowhegan, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, ROBERTS and CARTER, JJ.

ROBERTS, Justice.

George Arnold, Jr. was convicted on two counts of attempted murder and two counts of aggravated assault following a jury trial in the Superior Court, Somerset County, in August, 1979. Those judgments of conviction were affirmed in State v. Arnold, Me., 421 A.2d 932 (1980). In November, 1980 Arnold filed a motion for a new trial on grounds of newly discovered evidence pursuant to M.R.Crim.P. 33.[1] After a hearing before the justice who had presided at the original trial, the motion was denied. On appeal from that denial, we affirm the judgment.

At the original trial, the following evidence was produced: Arnold and his wife lived in Skowhegan, where they were neighbors of Mary Foss and her daughter, Tina. Mary Foss testified that on December 22, 1978 at approximately 11:30 p. m. Mary was awakened by Tina's screams. She observed standing over Tina, who was sleeping next to her, a bearded man who was not wearing shoes. This man came towards Mary; she flipped him over the bed. He recovered and began to stab Mary. Tina escaped from the bedroom, and fled down the hall to the kitchen telephone, turning on lights as she ran. The man ran after Tina and threw her from the phone to the living room floor where he began to stab her. When Mary came into the living room, the man released Tina. Immediately, Tina ran from the Foss trailer to the defendant's home, where she was admitted by Mrs. Arnold. The man then stabbed Mary in the back. He went out the trailer's front door. Mary locked the door behind him, and went out the back door located by the bedroom, making her way alone to the Arnolds' home. Sometime thereafter, the defendant entered his house; his jacket was bloodstained, and he was not wearing shoes.

Arnold testified that he had heard screams coming from the Foss trailer. He grabbed his shoes and ran outside. Seeing Mary, with blood on her, apparently locking the front door, Arnold entered the trailer through the back door leading into the laundry room. He saw blood on the kitchen floor, walked to the entrance of Mary's bedroom, but did not enter that room. He returned to his home, where Tina looked at him and said something like "It's you, why did you do this to mommy." Arnold left his home, and saw Mary approaching. He helped her into the house (Mrs. Arnold corroborated that testimony), and then returned to the Foss trailer in order to call the police.

Arnold admitted losing a blue knit hat and a watch. He had last worn the hat on the evening of the stabbings. A blue knit hat was found in the Foss bedroom on the

1. M.R.Crim.P. 33 states in part:
 The court on motion of the defendant may grant a new trial to him if required in the interest of justice.

 ... A motion for a new trial based on the ground of newly discovered evidence may be made only before, or within two years after, final judgment.

floor by the bed, and Arnold's watch was found in the Foss living room near the front door. Arnold denied at trial that he had either entered the Foss bedroom, or been in the part of the living room where his watch was found.

Arnold testified that the blood on his jacket resulted from his helping Mary into his home. Mary denied that Arnold had helped her. An expert witness testified that certain blood spatters on the jacket could have been made by shaking or slapping a bloody object, or during a struggle and stabbing performed by the wearer of the jacket.

At trial, Mary identified Arnold as her assailant. While at Arnold's home immediately after the attack, Mary said that her attacker looked like Arnold, but was shorter. Two weeks after the attack, she chose Arnold's photograph from a group of photographs as that of her attacker.

At the hearing on the motion for a new trial, the following evidence was produced: Terry Warren, a full-time police officer for the Norridgewock Police Department, and Fred Cole, a CETA probation officer who had been hired by the Norridgewock Police Department about two weeks before the stabbings with no previous training in police work, went to the scene of the crime in response to a request for assistance from a Skowhegan policeman. Warren testified that: fifty feet from Arnold's house and "quite a ways from the crime scene" he and Cole found shoe tracks in the middle of the street. They followed the tracks to a driveway. There three or four people were gathered with Warren and Cole when a bearded man in stocking feet came out of a house to ask what was going on. The man looked as if he had just gotten out of bed, he had no blood on him, his hands and face were grimy (the type of dirt that would wash off), he looked as if he had not washed for a day or so, and he did not act out of the ordinary. This occurred about a half hour after Warren arrived at the crime scene.

Fred Cole testified that: the boot tracks began at the back of Mary's trailer and led to the driveway. The bearded man was shorter than Arnold, very grubby, and not bloodied.

The presiding justice assigned little weight to Cole's testimony, resolving the discrepancies between his testimony and Warren's testimony in favor of the experienced officer, Warren. Applying the five-part test [2] governing the disposition of a motion for a new trial on the basis of newly discovered evidence, the presiding justice denied the motion, finding (1) that the exercise of due diligence would have uncovered the new evidence before trial and (2) that the new evidence would not have probably changed the result if a new trial had been granted.[3] Because we find that the justice's second finding is not clearly erroneous,[4] we need not decide whether he correctly ruled on the issue of due diligence.

The defendant has the burden of making a clear showing that a different verdict would result upon a retrial. *State v. Harding*, Me., 408 A.2d 1003, 1005 (1979). Because a motion for a new trial on the ground of newly discovered evidence is regarded with disfavor, the evidence which supports the motion must be convincing. *State v. Gagne*, Me., 349 A.2d 193, 199 (1975).

It is not enough for the defendant to show that there is a possibility or a chance of a different verdict. "[I]t must be made

---

2. The test is fully stated in *State v. Young*, Me., 413 A.2d 161, 161 (1980), *quoting State v. Casale*, 148 Me. 312, 319–20, 92 A.2d 718, 722 (1952).

3. In his ruling from the bench, the presiding justice first stated that due diligence would have uncovered the new evidence. He then said, "Furthermore, as a make weight to the Court's decision [the new evidence would not probably change the result]." The justice concluded "So, in that second aspect the Court finds the motion should be denied and that is the ruling of the Court." Read as a whole, the justice's ruling in our opinion sets forth two *independent* grounds for denying the motion.

4. *See State v. Collins*, Me., 416 A.2d 732, 733 (1980).

to appear that, in the light of the overall testimony, new and old, another jury *ought to give* a different verdict; there must be a *probability* that a new trial would result in a different verdict." *State v. Lewis*, Me., 373 A.2d 603, 611 (1977) (emphasis in original); *see Harding*, 408 A.2d at 1005.

Finally, it is for the presiding justice to determine both the weight and the credibility to be attached to the newly discovered evidence. *Gagne*, 349 A.2d at 199; *State v. O'Clair*, Me., 292 A.2d 186, 197 (1972); *see State v. Collins*, Me., 416 A.2d 732, 733 (1980); *State v. Heald*, Me., 395 A.2d 457, 458–59 (1978); *State v. Sawyer*, Me., 314 A.2d 830, 834 (1974).[5] The issue on appeal is whether his decision was clearly erroneous. *Collins*, 416 A.2d at 733; *Gagne*, 349 A.2d at 199.

Here, the presiding justice resolved the inconsistencies between Warren's testimony and Cole's testimony in favor of the former. Because the written record and

physical evidence do not rationally forbid his conclusion on that credibility issue, we must accept it. *Qualey v. Fulton*, Me., 422 A.2d 773, 776 (1980). In light of the evidence produced at trial, primarily the identification of Arnold as the assailant, and the hat and watch found in the Foss trailer, we cannot say that the presiding justice was clearly in error in ruling that Arnold failed to demonstrate that the new *credible* evidence probably would change the result.

The entry is:

Judgment affirmed.

All concurring.

---

5. The practice under Fed.R.Crim.P. 33 is the same.

> Where there is a grave question of the credibility of the after-discovered evidence, however, the role of the trial judge is that of the fact-finder . . . .
> [A] motion for new trial based upon after-discovered evidence, is designed to serve the ends of justice. It is made available as a means of relief from manifest injustice. That purpose would hardly be served if the law required the trial judge, who heard all of the evidence and saw all of the witnesses, to assume that a jury would believe testimonial evidence however improbable and unworthy

> of belief he finds it to be. If the purpose of the remedy is to be served, without subjecting it to undue abuse, the trial judge who approaches the question of the probable effect of the new evidence upon the result, in the event of a new trial, should be vested with a broad discretion in considering matters of credibility as well as of materiality.
> *Jones v. United States*, 279 F.2d 433, 436 (4th Cir. 1960) *cert. denied* 364 U.S. 843, 81 S.Ct. 226, 5 L.Ed.2d 190; *see United States v. Crandall*, 453 F.2d 1216, 1217 (1st Cir. 1972); *United States v. Maddox*, 444 F.2d 148, 152 (2d Cir. 1971); *United States v. Johnson*, 487 F.2d 1278 (4th Cir. 1973).