**STATE of Maine**

v.

**Harold ROWE.**

Supreme Judicial Court of Maine.

Argued June 21, 1984.

Decided Aug. 6, 1984.

---

James E. Tierney, Atty. Gen., Nicholas Gess (orally), Joseph A. Wannemacher, Asst. Attys. Gen., Augusta, for plaintiff.

Alan R. Nye (orally), Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

GLASSMAN, Justice.

On April 15, 1983, the defendant Harold Rowe was convicted of murder by a jury in the Superior Court, Cumberland County, 17–A M.R.S.A. § 201(1)(A) (1983). On appeal from the judgment he assigns numerous claims of error. The defendant also appeals the court's January 9, 1984 denial of his motion for a new trial based on newly discovered evidence. Finding no error on any of these grounds, we deny the appeal and affirm the judgment.

## I.

On December 3, 1982, the Maine State Police found the body of Michael Moore in

a wooded area near Route 302 in Windham. The State medical examiner later determined Moore had died from a gunshot wound to the head, inflicted two to six days prior to the discovery of the body.

On December 10, 1982, Officer Maurice Ouellette and Detective Richard Johnson of the Maine State Police went to Harold Rowe's home to ask Harold and his brother Timothy Rowe to accompany them to the Maine State Police barracks to discuss Moore's death. Finding Harold was not at home, the police left a message with his wife, asking him to call them. He did so at approximately 12:30 p.m. on that day. Harold and Timothy Rowe then met the police officers and were transported to the barracks.

Upon their arrival at the barracks, Officer Ouellette gave Harold full *Miranda* warnings which he acknowledged. After waiving his rights, Harold talked with Officer Ouellette for approximately 1½ hours, denied having knowledge of the circumstances surrounding Moore's death, and agreed to submit to polygraph examinations.

Prior to administering the polygraph examinations, at approximately 2:30 p.m. Detective Johnson gave Harold full *Miranda* warnings. Harold waived his rights, cooperated fully in the examination process, and again denied any involvement in or knowledge of the circumstances of Moore's death.

At approximately 5:30 p.m., Officer Ouellette again talked with Harold about Moore's death, reminding him that he was still "under his *Miranda* warning." Harold continued to deny any knowledge of or participation in the murder. In the middle of this conversation, Harold and Timothy were allowed to meet and confer privately. After the end of that meeting Detective Johnson told Harold that Timothy was now

saying that Harold had killed Moore. Harold then stated it was Timothy, not he, who shot Moore.

Harold fell asleep in the barracks at approximately 7:00 p.m., and was awakened by Officer Ouellette just before midnight. Fifteen minutes later, Harold was placed under arrest for the murder of Michael Moore. He was not again advised of his *Miranda* rights. At this time Harold gave the police a statement in which he implicated himself in the death of Moore.

On January 13, 1983, the grand jury returned a joint indictment against Harold and Timothy Rowe, charging both with intentionally or knowingly causing the death of Michael Moore, in violation of 17-A M.R. S.A. § 201(1)(A) (1983).[1]

Harold Rowe's pre-trial motion to suppress evidence of his inculpatory statement was denied. On April 15, 1983, the jury returned a verdict finding Harold Rowe guilty of murder.

On November 9, 1983, Harold Rowe moved for a new trial on the basis of newly discovered evidence. A hearing on the motion was held on January 9, 1984, at which two Thomaston inmates testified that Timothy had admitted to them that he, not Harold, had killed Moore. The court denied the motion.

## II. Motion to Suppress

The defendant first contends the trial justice erred in refusing to grant his motion to suppress the incriminating statement he made to the police shortly after his arrest in the early morning of December 11, 1983. He argues his statement was inadmissible for two reasons: (1) the police failed to give him full *Miranda* warnings at the time he was arrested, and (2) because he had consumed valium, alcohol, and marijuana within 24 hours prior to making the statement, it was not voluntarily given.

---

1. In the course of the trial, the court severed the case against Timothy Rowe from that against Harold Rowe. Timothy Rowe later was acquit- ted of the murder charge but found guilty of other charges.

■ We find the defendant's contention with respect to the *Miranda* issue to be without merit. The motion justice's findings, which we find amply supported, were that Harold Rowe was fully advised of his constitutional rights at approximately 12:30 p.m. and again at 2:30 p.m., and he was reminded he was "still under *Miranda*" at approximately 5:30 p.m. In *State v. Myers*, 345 A.2d 500, 502 (Me.1975), we described five "objective indicia ... significant in determining when an accused must be reinformed of his constitutional rights," and stated: "Where 'Miranda' warnings are not repeated during an ongoing interrogation the ultimate question is, did the defendant with full knowledge of his legal rights knowingly and intentionally relinquish them?" *Id.* We agree with the motion justice's conclusion that the period elapsing between the time the defendant was last advised of his rights and when he made his statement was not so long as to be unreasonable, and he was completely aware of his rights at the time he made the inculpatory statement.

■ With respect to his claim that his inculpatory statement was involuntary, and therefore inadmissible, the defendant relies on evidence that he had consumed valium, alcohol, and marijuana within 24 hours of making the statement. He does not argue, however, that the drugs were having a continuing effect on him at the time he incriminated himself.

We have repeatedly stated that consumption of drugs, including alcohol, by an accused does not automatically render a subsequent confession involuntary. *E.g.*, *State v. Bleyl*, 435 A.2d 1349, 1360–61 (Me. 1981); *State v. Gordon*, 387 A.2d 611, 612 (Me.1978). In *Bleyl*, we explained: "The particular circumstances of each case must be evaluated to determine whether a defendant's drug-related condition made him incapable of acting voluntarily, knowingly, and intelligently." 435 A.2d at 1360–61.

Evidence adduced at the suppression hearing established the accused had responded fully in the interrogation sessions, was alert, participated actively in the polygraph examinations, and in other ways exhibited that he was conscious of the import of the investigatory proceedings. We are satisfied the motion justice committed no error in finding Harold Rowe's statement to be voluntary.

### III. Corpus Delicti

When the State attempted to introduce, through Officer Ouellette, Harold Rowe's statement implicating him in the death of Michael Moore, defense counsel objected to its admission on the ground that the State had failed to establish the corpus delicti. The court overruled the objection: "I think the evidence is sufficient to justify at least an inference that, and I'm satisfied the corpus delict has been met in terms of the fact that a crime or crimes have been committed." On appeal, the defendant argues the court's ruling constitutes reversible error. We disagree.

In *State v. Curlew*, 459 A.2d 160 (Me. 1983), we explained that there are two aspects of the corpus delicti rule: the "evidence rule," concerning the order of proof at trial, and the "substantive rule," requiring the State to prove the corpus delicti on the whole record exclusive of any confession or admission of the defendant. *Id.* at 163. It is unclear which of these subparts of the rule the defendant claims was violated. We find, however, no error on either ground.

■ Harold Rowe argues that at the time the State attempted to introduce his incriminating statement through Officer Ouellette, the State had not yet established that a crime had been committed.[2] In *Cur-*

---

**2.** The defendant concedes the State need not establish that the crime committed was murder, but only that an unlawful homicide was committed by someone, and the death was not due

*lew*, we held, "[T]he trial judge's discretion under M.R.Evid. 611(a) extends to the order-of-proof requirement of the corpus delicti rule." *Id.* at 164. Although we expressed a "strong preference for proof of the corpus delicti prior to admitting in evidence a confession or admission of the defendant," *id.*, we recognized this is not a requirement under Maine law.

██ The "substantive rule" aspect of the corpus delicti rule, as we discussed in *Curlew*, requires a two-part analysis:

That analysis should include (1) whether there is sufficient evidence of the corpus delicti exclusive of any admission or confession of the defendant and (2) whether there is sufficient evidence on the whole record to establish the corpus delicti beyond a reasonable doubt.

*Id.* We further explained that, independent of the defendant's confession or admission, evidence of the corpus delicti need only meet the "probable cause standard." *Id.* at 165. When all evidence in the record, including the confession or admission, is considered, however, the corpus delicti must be established beyond a reasonable doubt. *See State v. Chabot,* 478 A.2d 1136, 1138 (Me.1984).

██ Independent of Harold Rowe's statement, the State introduced evidence that (1) Michael Moore's body was found in the woods, with a bullet hole in the back of his head, (2) no vehicle was found at the scene, (3) no firearm was found at the scene, (4) an expended shell from a gun belonging to Harold Rowe's brother-in-law, which had been lent to Harold during the time of Moore's death, was found approximately 150 to 200 feet from Moore's body, and (5) two more discharged shells from the same firearm were found in a drain trap at a car wash in Portland. We find the State adduced sufficient evidence independent of the defendant's admission to support a substantial belief that Michael

to suicide, accident, or natural causes. *State v.*

Moore's death was caused by the criminal agency of another and was not due to suicide, accident, or natural causes. *State v. Anderson,* 409 A.2d 1290, 1301 (Me. 1979). This evidence, in conjunction with Harold Rowe's admission, established the corpus delicti beyond a reasonable doubt.

## IV. Tape Recording

██ The defendant also contends he is entitled to a new trial because the trial justice abused his discretion by refusing to admit in evidence a tape recording offered by the defendant. We hold the court properly exercised the discretion accorded it by M.R.Evid. 403 in excluding the proffered evidence.

In an offer of proof made out of the jury's presence, the defense played a tape recording of a conversation between Timothy and Harold Rowe and Michael Moore, occurring on October 17, 1982, about 1½ months prior to Moore's death. In the recorded conversation, Harold Rowe is apparently trying to dissuade Moore from committing suicide. The defendant argued the tape should be admitted to show his "absence of motive" to kill Moore. The State contended the conversation was not relevant, had no probative value as to motive, and was misleading. The court, in refusing to admit the tape, stated: "I'm satisfied it has minimal, if any, relevancy, and moreover because of the length of the time again, I deem to be too remote to have any probative value as to motive in this case."

██ In *State v. Kotsimpulos,* 411 A.2d 79, 81 (Me.1980), we stated, "The presiding justice must exercise his discretion under Rule 403 in determining whether logically relevant evidence is so lacking in probative value that it should be excluded under the circumstances of the case." Although it is generally true, as the defendant points out, that remoteness affects the weight rather

*Anderson,* 409 A.2d 1290, 1301 (Me.1979).

than the admissibility of evidence, *State v. Ledger*, 444 A.2d 404, 414 (Me.1982), where, as here, the evidence is determined to be so remote as to have little probative value, the judge commits no abuse of discretion by not allowing it to be submitted for the jury's consideration.

### V. Motion for a New Trial

■ On November 8, 1983, Harold Rowe moved for a new trial, alleging he had "newly discovered evidence" to prove Timothy Rowe, not Harold, had murdered Michael Moore. At the hearing on the motion, two Thomaston inmates testified that Timothy had admitted to them that he had shot Moore. Both witnesses stated a dispute between Timothy Rowe and Moore, concerning Timothy's involvement with Moore's girlfriend, had prompted the shooting. The State called Bonnie Jeanne McGhee, the girlfriend, who testified she had not been involved with Timothy Rowe at all.

In denying the defendant's motion, the court stated from the bench:

I'm satisfied the evidence was sufficiently presented to the juries in both cases, and the findings of the jury was [*sic*] adequate based upon the evidence that they had and that these stories that have been produced here today and in affidavit form by questionable individuals, themselves, in one instance, a professed murderer who is serving a term of fifty years, just recently having been convicted, I'm satisfied that if it was in fact told to Mr. Pallitto what is suggested by his testimony here today from the mouth of Timothy Rowe, that in and of itself wouldn't surprise me either due to the fact again that Timothy's stories have waffled and wavered over the period of time that they have been before the Court having been charged with these offenses.

The court's ruling was clearly based on its assessment of the credibility of the witnesses. "[I]t is for the presiding justice to determine both the weight and the credibility to be attached to the newly discovered evidence.... The issue on appeal is whether his decision was clearly erroneous." *State v. Arnold*, 434 A.2d 57, 60 (Me.1981). We find no such error in the present case.

In *State v. Young*, 413 A.2d 161 (Me. 1980), we described the five factors the defendant must show in order to gain a new trial on the ground of newly discovered evidence: (1) the evidence is such as will probably change the result if a new trial is granted, (2) it has been discovered since the trial, (3) it could not have been discovered before the trial by the exercise of due diligence, (4) it is material to the issue, and (5) it is not merely cumulative or impeaching, unless it is clear that such impeachment would have resulted in a different verdict. *Id.* at 161, citing *State v. Casale*, 148 Me. 312, 319–20, 92 A.2d 718, 722 (1952).

The first of these criteria, which is the one primarily pressed by the defendant on appeal, was further explained in *State v. Arnold:*

It is not enough for the defendant to show that there is a possibility or a chance of a different verdict. "[I]t must be made to appear that, in the light of the overall testimony, new and old, another jury *ought to give* a different verdict; there must be a probability that a new trial would result in a different verdict." *State v. Lewis*, Me., 373 A.2d 603, 611 (1977) (emphasis in original).

434 A.2d at 59–60. In the instant case we agree with the motion justice that the defendant made no such showing that a new trial probably would result in his acquittal. The motion was therefore properly denied.

The entry is:

Judgment affirmed.

All concurring.