### STATE of Maine

### v.

### Daniel H. PINNETTE.

Supreme Judicial Court of Maine.

June 16, 1975.

Michael E. Barr, Asst. County Atty., Augusta, for plaintiff.

Alan C. Sherman, Waterville, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

DELAHANTY, Justice.

A jury in the Superior Court (Kennebec County) convicted defendant Daniel H. Pinnette of aggravated assault and resisting arrest. He appeals his conviction, and we deny his appeal.

Circumstances both bizarre and bathetic marked the evening of October 16, 1973, on which defendant imperilled two law officers and earned himself not more than five years in prison. After an evening's circulation among the various taverns of downtown Waterville, defendant sought a somewhat wider field for his diversion and amusement. At 2:00 a. m. he visited the house of Mrs. Florence Hallee, to whom he was formerly engaged. In a spirited mood, defendant hoped for a reunion with Mrs. Hallee that would feature both reconciliation and romance.

Mrs. Hallee was not at home. But defendant was not to be discouraged. Confident of a favorable reception, he decided to await Mrs. Hallee's return, meanwhile enjoying the comforts of her house and larder. Thus, he took a single-blade ax from his truck, smashed a pane of glass in the kitchen door, and entered the Hallee residence. Remembering Mrs. Hallee's amiable nature, and finding some beer in her refrigerator, he took the beer and sat at the kitchen table. Thus fortified, defendant awaited Mrs. Hallee's return.

Soon after Mrs. Hallee returned, it became evident that defendant had seriously misjudged the extent of her affection for him and the prospects of reconciliation. Mrs. Hallee was mortified and angered that defendant had thought so lightly of her as to violate her house and to traduce her privacy. She told defendant to leave. But defendant was reluctant to abandon his pleasant expectations for the night. He demurred to Mrs. Hallee's complaints. Mrs. Hallee thereupon called the police station to procure assistance in ejecting her unwanted admirer. Defendant remained in Mrs. Hallee's kitchen. Soon two law officers approached the outside screen door, which was closed. The inside door, with the broken glass, was open, and light from the kitchen shone on the outside landing.

At this point, accounts vary. The law officers stated that they heard a heavy thumping noise as they climbed the back stairs to the landing. Since they had been summoned by Mrs. Hallee, they presumed her consent and opened the screen door to enter. They stated that defendant was pounding his ax on the floor and muttering crude imprecations.[1] Upon noticing the presence of the officers, defendant's eyes allegedly grew large, and he arose. As the officers related, Mrs. Hallee was standing in front of the defendant with her arms on his shoulders, as if she were trying to restrain him. She was saying, "Please don't, Danny. Don't start any trouble. Please don't." He started to swing his ax in the direction of the officers, but brushed against Mrs. Hallee, breaking his swing. He started to swing again, with the ax at waist level, and was coming around, when an officer lunged at him and grabbed him around the neck from behind. Ac-

---

1. The police testified that the defendant said: "Let the f_ _ _ _ _s come, I am ready."

cording to the officers' account, which we are following, defendant was subdued only after much thrashing and wrestling. The officers and defendant grappled down a hallway and rolled onto the living room couch, where defendant finally conceded defeat. He was handcuffed and led away.

According to defendant, he and Mrs. Hallee were seated at the kitchen table, amicably chatting, when the police officers burst into the room. Defendant may have said: "Let them come. They'll just give me a ride home." Defendant denies pounding the ax on the floor. He states that he stood up when the police entered. The ax was in his hands, but he never swung it. Rather, he says, the law officers barked at him: "Pinnette, we have had enough of you; we have got you this time. You're going to jail." And with that, according to defendant, the officers leaped across the room at him, seized his throat, and throttled him. The ax fell away from his hands, and Mrs. Hallee retrieved it. Defendant concedes he may have instinctively resisted the officer's choke-hold, but denies any sort of a protracted struggle.

Mrs. Hallee's testimony substantially corroborated that of the defendant. When the police entered the room, she heard them say: "Pinnette, we've had just about enough of you." She stated that she and defendant were seated when these remarks were uttered; thereupon they both stood up. Most importantly, Mrs. Hallee stated that defendant did not swing the ax. There was a scuffle, and she took the ax out of defendant's hand and put it aside. Because she was thus occupied, she could not describe the seizure of defendant too exactly.

Two indictments were returned against defendant on January 5, 1974. They charged him with assault and battery of a high and aggravated nature (17 M.R.S.A. § 201)

and assault with intent to kill (17 M.R.S.A. § 2656). In addition, a complaint was filed charging defendant with resisting apprehension while being taken into custody (17 M.R.S.A. § 1405). A jury found defendant guilty of high and aggravated assault and of resisting arrest. Defendant's motion for a new trial was denied.

Defendant's appeal presents four principal issues:

(1) whether the court erred by denying defendant's motion of acquittal on the charges of assault with intent to kill and resisting arrest;

(2) whether the court erred by permitting the impeachment of defendant's witness by accusatory questions without an adequate offer of proof;

(3) whether defendant was prejudiced by a reading of the indictment against him which charged assault and battery when in fact defendant was actually charged with high and aggravated assault; and

(4) whether the court committed reversible error by instructing the jury that if they found the defendant not guilty of high and aggravated assault, they may still find him guilty of simple assault, when in fact the evidence presented at trial might not on any theory support a finding of simple assault.

I. Denial of Motion of Acquittal on Charges of Assault with Intent to Kill and Resisting Arrest

At the conclusion of the State's case, defendant moved for acquittal on the charges of assault with intent to kill and resisting arrest. The indictment for assault with intent to kill issued pursuant to 17 M.R.S.A. § 2656.[2] The indictment charged

2. In material part, § 2656 reads: "Whoever assaults another with intent to murder or kill, if armed with a dangerous weapon, shall

be punished by imprisonment for not less than 2 nor more than 25 years. . . . Whoever assaults another with intent to murder or

that defendant "being then and there armed with a dangerous weapon, to wit, a single blade axe, with a 4½ by 7″ blade, feloniously did assault one Ronald Raymond [a law officer], with intent . . . then and there feloniously to kill."

■ Assault with intent to kill is a crime in which specific intent, i. e., subjective state of mind or intent or design, is necessary to be proved beyond a reasonable doubt before a conviction can be had. Bessay v. State, Me., 297 A.2d 373, 376 (1972). The specific intent to be proved is the intent to kill. And though defendant's own testimony as to his intent is admissible as evidence bearing on the requisite specific intent, an intent to kill may also be inferred from the circumstances where a defendant acts in reckless or wanton disregard for the safety of others. State v. Barnett, 150 Me. 473, 476, 114 A.2d 245, 247 (1955). The act itself under the existing circumstances may show guilty intention. Id. Thus, while the specific intent to kill must be proven beyond a reasonable doubt, the specific intent may be inferred from circumstances proximate to the assault charged. See State v. Eaton, Me., 309 A.2d 334, 339 (1973).

■ In the present case there was direct, admissible evidence tending to show an assault by defendant with an ax against two law officers. There was also evidence of defendant's vehement and minatory animadversions upon the law officers as they entered the room. We acknowledge that defendant denied any hostile intent, indeed, denied any hostile act against the officers. But certainly defendant's denial in this case did no more than raise a question of fact for the jury. We hold that there was sufficient evidence of the wantonness of defendant's motive or design to warrant a submission to the jury of the charge of assault with intent to kill. We also note

that the jury acquitted defendant of this charge.

As to resisting arrest, the material portions of the statute read: "Whoever resists apprehension or breaks arrest shall be punished by a fine of not more than $1,000 or by imprisonment for not more than 11 months." 17 M.R.S.A. § 1405.

According to the account of the law officers, defendant assaulted them, thereby committing either a misdemeanor or a felony in their presence, according to the nature of the assault, and warranting an arrest. Even according to defendant's account, the law officers entered Mrs. Hallee's kitchen announcing, "Pinette . . . you're going to jail." The intention to apprehend defendant was plain on the facts.

■ That defendant may have resisted apprehension by a struggle, albeit involuntary or instinctive, is a fact to be gleaned from his own account of events. According to the officers, defendant's resistance was strenuous and forcible. The clash of facts was for the jury to resolve. The Superior Court did not err in allowing the charge of resisting apprehension to be decided by the trier of fact.

II. Impeachment of Defendant's Witness by the State

Defendant called Mrs. Hallee as a witness to corroborate defendant's account of the evening's events. When she was cross-examined by the State, there occurred the following colloquy:

Q Has the significance of what you are telling the jury now ever been explained to you by [your attorney]?

A No, this is the truth, and this is what I told [my attorney], and this is what I am telling the jury. I haven't had anyone legally say this or that, or anything else. I was just asked my

kill, if not armed with a dangerous weapon, shall be punished by a fine of not more than

$1,000 or by imprisonment for not more than 10 years."

story and I told it, and this is the same thing that I told him in Waterville when this happened.

Q And in Waterville, isn't it true that you told the police officers when they arrived that you said, "Danny, please don't"?

A No, they said that I said that.

Q You didn't say that?

A I didn't say that, no, the officers both said that I said that, which I don't understand.

Q Let me get this perfectly clear. You did not get on the stand in District Court in Waterville and testify that you said when the officers arrived at your house, "Danny, please don't"?

MR. SHERMAN: Objection Your Honor. I don't think that there was any Court record taken at the Court hearing below. We are traveling on rather dangerous grounds.

THE COURT: Wait a minute, let me say something. The rule is that you may not ask a witness if she said a certain thing on a prior occasion, unless if she denies it you are prepared to offer proof to the contrary, and that proof doesn't have to be a reportorial proof, but someone who was there and has a recollection of it.

MR. BARR: Your Honor, I would ask that the witness answer the question. We are prepared to offer proof to the contrary.

A I don't believe I said it, no.

Q You don't believe you said it, but do you know positively whether you did or didn't?

A No, I don't.

Q So as I understand your answer now to be that you can't be sure

whether or not you said it? You might have?

A I might have.

Defendant objects to the State's line of questioning on the ground that it was improper to impeach the witness through the use of unrecorded testimony taken at a preliminary hearing.

■■■ On this point, defendant takes nothing by his objection. It is well settled that prior inconsistent statements made out of court or at a former judicial proceeding are admissible to impeach a witness's credibility. State v. Pullen, Me., 266 A.2d 222, 225 (1970). The inconsistent statements need not be introduced as recorded testimony; rather, the testimony of any person who heard the inconsistent declaration would have been admissible for impeachment, id. at 225, so long as the impeachment was relevant, material, and preceded by a proper foundation. See State v. Dyer, Me., 289 A.2d 693, 694–95 n. 3 (1972).

■■■ However, the prosecutor's provocative line of questioning, by which he sought to put inconsistent words into the mouth of the witness through accusatory questions, was not without its dangers. To exercise the right to cross-examine and to impeach through innuendo in question form, it became incumbent upon the cross-examiner on objection to show that he had a present ability later to offer the impeaching evidence his cross-examination was seeking to flush out. See *Pullen,* supra, 266 A.2d at 226. It appears under the *Pullen* case that the cross-examiner may question the witness concerning the prior statement without the need of disclosing the evidence of the statement to the witness. It is only upon objection that the cross-examiner need "show that he had a present ability later to offer the impeaching evidence." Id. In some cases, such as *Pullen,* a failure to make an offer of proof to the court, as to the expected answer or the nature of

the impeaching evidence, may cause the cross-examiner to lose his right to object when his evidence is excluded. Id. See International Paper Company v. State, Me., 248 A.2d 749, 753 (1968).

In the present case, the witness was questioned concerning her previous statements. The questions were doubtless intended to impeach the witness's credibility before the jury. Upon objection by opposing counsel, the State's attorney stated his present ability later to offer the impeaching evidence. At this point, opposing counsel raised no further objection, and the Superior Court apparently acquiesced in the line of questioning.

■ It appears from the record that the State made its offer of proof ["We are prepared to offer proof to the contrary."] in the presence of the jury. In the ordinary case, the details of the offer should not be stated in the jury's hearing because of the possibility that the statement may be taken by them as true and relevant, even though it be excluded by the judge. See 6 J. Wigmore § 1808, at 276 (3d ed. 1940). Thus, opportunity should be afforded for the jury's retirement before orally stating the offer. Id. at 275.[3]

■ However, we cannot say that any error manifested by making the offer of proof in the presence of the jury affected the defendant's substantial rights. The language of our rules is mandatory: we must disregard errors or irregularities which do not affect substantial rights. M.R.Crim.P. 52(a). Here, the offer of proof was truncated. The prosecutor merely stated his present ability to prove the contrary without repeating the accusatory innuendoes with which he was belaboring the witness. Moreover, after the offer, when the court apparently allowed cross-examination to continue, the witness modified her earlier

denial. She equivocated by allowing that, after all, she might have made the prior inconsistent statement. Thereafter, the line of questioning was abandoned. In view of the abbreviated form of the offer of proof and the witness's subsequent equivocation, it appears to us that the offer of proof, though improper, could not have inflenced the verdict. See 6 J. Wigmore, supra, § 1808, at 278. Neither can we here reverse the Superior Court for abuse of discretion in failing to apply principles of law applicable to a situation resulting in prejudice. See State v. Warren, Me., 312 A.2d 535, 544 (1973). There was no prejudice to defendant. The error was harmless, and Rule 52(a) controls.

III. Whether Defendant was Prejudiced by a Reading of an Indictment Which Charged Assault and Battery when in fact Defendant was Actually Charged with High and Aggravated Assault

At the beginning of the trial, the clerk read aloud the indictments against defendant in open court before the jury. In one of these indictments, captioned "Assault and Battery, High and Aggravated", the grand jury charged defendant with assault and battery of a high and aggravated nature. This charge was read to the trial jury.

The presiding Justice instructed the jury that the defendant was charged under two indictments, one for assault with intent to kill and the second for assault high and aggravated. The Justice instructed the jury that the charge against defendant under the second indictment was assault only. The Justice carefully explained the elements of aggravated assault, but emphasized that under the indictment there was no basis for finding defendant guilty of a battery.

3. See Maine Rules of Evidence (eff. February 2, 1976), Rule 103(c): "In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury."

After the Presiding Justice had completed his instructions, defendant raised several objections. Defendant argued that the proof must follow the allegations of the indictment, and that by revising the charges against defendant to conform to the proof, that is, by the omission of the charge of battery, the defendant was prejudiced, since the indictment had erroneously informed him of the charges against him. Also, defendant contended that he had been prejudiced before the jury by the reading in open court of the graver charges (battery) contained in the indictment.

The Justice felt that the charge of assault only conformed to the law, but he offered to recall the jury and to specially instruct them to ignore the reading of "battery" in open court. Defendant refused this suggestion. He felt that an attempt to rectify the reading of the indictment would only serve to confuse the jury.

The State then proposed to strike the word "battery" from the indictment. The Presiding Justice concurred and so, apparently, did defendant, saying: "Just strike it and let it go at that."

 We hold there was no error in the above-described proceedings. Defendant does not contend that the indictment was inadequate to properly raise the charge of high and aggravated assault. Plainly, it was adequate to do so. See Williams v. State, Me., 276 A.2d 601, 602–03 (1971). The Presiding Justice specifically limited his instructions to a charge of assault and excluded battery by name. In our opinion, by offering supplemental instructions to undo any deleterious effect of the earlier reading, the Presiding Justice walked the second mile in an effort to do justice.

 Moreover, there is no defect intrinsic to the State's efforts to dismiss the unnecessary portion of the indictment at a bench conference with the Presiding Justice and opposing counsel. Where a dismissal of a portion of an indictment does away with excessive charges and does not alter the nature of the criminal charges against the defendant, the partial dismissal is not an amendment of the indictment such as would require the indictment to be resubmitted to the grand jury. See Weeks v. State, Me., 250 A.2d 827, 829 (1969). Here, since assault is a lesser included offense within a charge of battery, *Williams,* supra, 276 A.2d at 603, the dismissal of the battery element of the indictment does not change the nature of the charge of assault remaining under the indictment: defendant was always charged with assault as a constituent element of an assault and battery. There was record consultation between the State, the court, and the defendant's counsel, and the Presiding Justice did not err in allowing the motion for dismissal of the battery charge from the indictment. See *Weeks,* supra, 250 A.2d at 829–30.

IV. Whether the Court Committed Reversible Error by Instructing the Jury that if They Found the Defendant Not Guilty of High and Aggravated Assault, They May Find Him Guilty of Simple Assault, when in fact the Evidence Presented at Trial Might Not on any Theory Support a Finding of Simple Assault

In his instructions to the jury, the Presiding Justice charged that if the jury concluded there was an assault, but that the assault was not of a high and aggravated nature, then a verdict of simple assault would be warranted. Defendant objected to this charge as erroneous and prejudicial. It was error, defendant argued, because simple assault is a misdemeanor, while aggravated assault is a felony; therefore in defendant's view the two are separate offenses. Defendant contends that the charge was prejudicial because a simple assault could not be proven on any factual theory of the State's case, yet by presenting simple assault in his charge to the jury, the Presiding Justice lugged in an unnecessary offense which may have colored the jury's deliberations against the defendant.

---

We think defendant's argument utterly unfounded. Under 17 M.R.S.A. § 201 there is but one unitary offense, and that is assault or assault and battery. State v. Shorey, Me., 301 A.2d 3, 5 (1973). We have emphatically stated that assault of a high and aggravated nature is not a distinct and separate crime. Id. at 5. The crime is assault. Factual circumstances suggesting aggravation are not elements of the crime but go only to the severity of the sentence. State v. Ferris, Me., 249 A.2d 523, 527 (1969); see State v. L**** D****, Me., 320 A.2d 885, 888 & n. 2 (1974). We need not reiterate the nature of the circumstances which may impart the flavor of aggravation to the assault. See State v. Smith, Me., 306 A.2d 5, 6–7 (1973); State v. Bey, 161 Me. 23, 26–27, 206 A.2d 413, 416 (1965). It is enough to say that the charge of aggravation was duly alleged and pleaded in a form that notified defendant of what he was to meet in the trial of the case. *Ferris,* supra, 249 A.2d at 528; see State v. Davenport, Me., 326 A.2d 1, 8–9 (1974).

None of the above considerations preclude the Presiding Justice from instructing the jury on a charge of simple assault. Since the crime is assault, and the aggravating factors may or may not be proven, a verdict of simple assault is well within the range of factual considerations appropriate for jury resolution.

Defendant's present appeal raised more questions than we have discussed in this opinion. We have considered the additional issues he addressed to us, and we deem them unmeritorious. We decide those points, as well as the ones we have discussed, against him. There is no need for us to set out and adjudicate sundry questions well established in our law.

The entry must be:

Appeal denied.

All Justices concurring.