STATE of Maine

v.

Frederick J. BURNHAM and Robert A. Creamer.

Supreme Judicial Court of Maine.

Jan. 12, 1976.

Kenneth E. Kimmel, Sp. Asst. Atty. Gen., William P. Donahue, Dist. Atty., Alfred, for plaintiff.

Ray R. Pallas, Westbrook, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

ARCHIBALD, Justice.

Frederick J. Burnham and Robert A. Creamer were separately indicted for breaking, entering and larceny in the nighttime (17 M.R.S.A. § 2103). Without objection the two indictments were consolidated for trial. Jury trial was had in York County Superior Court on February 12 and 13, 1974. Both defendants were convicted and each has appealed.

We deny the appeals.

I

Under Rule 16(a), M.R.Crim.P., appellants sought to obtain a transcript of the criminal record of one Shelton L. Eaton from the State Bureau of Identification or the Federal Bureau of Investigation, and also a copy of any photographic identification which the State may have had of Eaton. This motion was denied on January 31, 1974.

Appellants have furnished us with no transcript of the hearing incident to this adverse ruling. However, in the briefs they argue that because a witness for the State testified to a statement made by Burnham to Eaton in the presence of Creamer and since Eaton was not a prosecution witness, it would have been theoretically helpful to the defense to have such knowledge of Eaton as might be disclosed by these records.

Rule 16(a), M.R.Crim.P., allows discovery upon a showing "that the items sought may be material to the preparation of his defense." We have no way of knowing whether any showing of materiality was made to the Justice below and, therefore, have no basis upon which to predicate a finding of error. None of the suggested conditions under which it might have been appropriate to order production of the requested information indicated in *State v. Toppi*, 275 A.2d 805, 812 n. 6 (Me.1971), exists in this record.

The State Bureau of Identification operates within the Bureau of State Police and is charged with the assimilation of criminal records. *See* 25 M.R.S.A. §§ 1541–1549. Nowhere in this statute is there any provision for the confidentiality of such records. It is therefore apparent that the defendants had a right to subpoena such records as may have existed in the Bureau. We recently commented that Rule 16(a) "is not designed to be a

labor saving device for defense counsel." *State v. Boyajian,* 344 A.2d 410, 413 (Me. 1975).

■■ It is also obvious, since there was no showing that the State had in its possession any records from the Federal Bureau of Investigation, that such records would not be discoverable in a state court proceeding. The "possession, custody, or control of the state" of discoverable material is a condition precedent under Rule 16(a) for a discovery order.

Appellants' position is without merit.

### II

The State called a sixteen year old girl who, over objection that her testimony was hearsay, was allowed to testify: "He [Burnham] had asked whether there was any place around to break into." She was repeating her recollection of a conversation which she overheard between Burnham and one Shelton L. Eaton which occurred in the late evening prior to the commission of the crime in the early hours of the following morning. Burnham and Creamer had been seated in a blue Mustang on a street in Cornish, the locus of the crime, while Eaton, the young lady, and several others spent some time talking with them.

We have no problem with the admissibility of this testimony.

"Statements of *design or plan* . . . are in general admissible, so far as the design or plan is relevant to show the doing of the act designed."

6 Wigmore on Evidence, § 1732(1), (3d ed.). At an early point this Court held:

"[D]eclarations of defendants, tending to show their formed determinations to commit crimes, are always admissible against them, when accused of committing the same."

*New Gloucester v. Bridgham,* 28 Me. 60, 68 (1848) ; *see Rockland & Rockport Lime*

Co. v. Coe-Mortimer Co., 115 Me. 184, 98 A. 657 (1916).

■ A bystander may testify to incriminating declarations of one person made in a conversation with another. *United States v. Bucur,* 194 F.2d 297 (7th Cir. 1952).

Our holding is likewise consistent with the new Maine Rules of Evidence which become effective February 2, 1976. Rule 801(d)(2) provides:

"A statement is not hearsay if:

(2) The statement is offered against a party and is (A) his own statement, in either his individual or a representative capacity . . .."

The testimony was properly admitted.

### III

A Maine State Police officer arrived at the scene of the break shortly after it was discovered. He was given the registration number of a blue Mustang and set out immediately in pursuit. After proceeding several miles he overtook a vehicle which matched the description he had been given. On stopping the vehicle both defendants were found therein, Burnham being the driver. Since Burnham had neither an operator's license nor the registration of the vehicle, he was arrested and taken into custody. In moving the blue Mustang out of the travel portion of the highway, the trooper noted on the floor near the passenger seat "a pair of what appeared to be brand-new gloves," described as "monkey face type work gloves." These gloves were taken into custody and ultimately introduced into evidence over objection.

■ Appellants first argue that since the indictment did not allege the theft of the gloves their admission was improper.

The obvious purpose for introducing this exhibit was to bring into play the inference that may arise from being found in posses-

sion of recently stolen goods. *State v. Gove*, 289 A.2d 679 (Me.1972). As a condition precedent to the admission of goods said to have been recently stolen, it is unnecessary that an indictment for violating the provisions of 17 M.R.S.A. § 2103 allege the theft of those particular goods. In *State v. Bickford*, 308 A.2d 561 (Me. 1973), a set of ornamental bells found in the possession of the defendant was properly admitted to support this inference despite the failure of the indictment to allege its theft. Such is the case here.

 The second prong of appellants' argument is that there was insufficient evidence to prove that these particular gloves had been stolen incident to the breaking and entering charged.

The owner of the store testified that in addition to 338 cartons of cigarettes some work gloves were found to be missing, which had been displayed directly in front of the area where the cigarettes were kept. Another pair of gloves had been found at the rear of the building intermingled with some of the stolen cigarettes. The gloves bore the trademark "Boss," and the exhibit was identical. Of course, it is true that the store owner was unable to identify specifically the gloves recovered from the automobile.

The owner of the vehicle, testifying for the defense, suggested that the gloves may have been in the Mustang when he originally loaned it to the defendants. However, his cross-examination cast considerable doubt on whether such was the fact. As in *State v. Small*, 267 A.2d 912 (Me.1970), ownership of this pair of gloves could be established by circumstantial evidence and we feel that there were sufficient circumstances here established to justify the admission of the gloves into evidence.

In his instructions to the jury the Justice presiding was meticulously careful to limit the evidentiary value of the gloves. Having explained the purpose for their admission, he, without objection, admonished the jury:

"Of course, in this case you would first have to be satisfied that the gloves which are in evidence and which are the subject matter of which I am talking were in fact gloves that were taken from the store which the State contends was broken into and the larceny committed, because if you are not satisfied that these are gloves that had been taken from the store, then obviously they mean nothing. But if you are satisfied, and again beyond a reasonable doubt, that these are gloves that were taken from the store, you may, if you wish, infer from the facts that the recent possession by these defendants of those gloves, unexplained, is evidence of the fact that they broke into the place and stole them. Or you may consider that, in light of all the circumstances, you are not drawn to that conclusion and you may refuse to draw that inference, but the law says if it appeals to your reason and your logic and your intelligence you are permitted to make such an inference if you find (1) that the gloves were in fact taken from the store, (2) that they were recently found in the possession of the defendant or defendants, and (3) that the recent possession as such remains unexplained by any other logical conclusion or suggestion as to how they came into the possession of the defendants."

The gloves were properly admitted.

### IV

 Appellants have argued that there was insufficient evidence upon which a jury could find beyond a reasonable doubt that there had been a breaking into the building.

Since the evidence excluded any other means of ingress, entry into the building was gained through a window in the back of the store. Because of the summer heat the sash had been removed and a wooden slat nailed across the opening, thus making entry through the window impossible. However, after the break was discovered,

this slat was found to be hanging perpendicular to the ground, held by only one nail. The owner of the store testified that the day before this slat was properly in place. Although the owner's son was unable to testify that the slat was in place when the store was closed on the evening preceding the break, there was no evidence that either the father or son had removed the slat. Since it had been securely nailed, the jury could infer that the thieves had removed it in order to gain admission. These facts would support a finding of forcible and felonious entry into the premises.

### V

■ Appellants finally argue that the evidence was insufficient to support the verdicts. Appellants having procedurally saved this issue for appellate review, our duty is to determine "whether, in view of all the evidence in the case, there was legally sufficient evidence to support the guilty verdict." *State v. Westphal*, 349 A.2d 168 (1975).

In summary, the jury could have found the following facts:

(1) Defendants were in Cornish at the time of the alleged crime.

(2) They had previously evidenced a desire to commit the crime of breaking, entering and larceny.

(3) Two males were observed entering and leaving the store through the back window in the vicinity of 1:30 a.m.

(4) 338 cartons of cigarettes were found cached outside the building.

(5) The arrival of the store owner caused the two participants to flee from the scene.

(6) Tracks described as "running, definitely," headed from the store through some woods and sandy ground, to a highway intersection.

(7) Shortly after the crime had been discovered a blue Mustang with two people in it was observed driving away from this intersection.

(8) This same blue Mustang was seen shortly thereafter proceeding through Cornish toward Portland.

(9) The blue Mustang had been loaned the defendants at about 8:00 p.m. for the purpose of driving a third party to Kezar Falls, a short distance from Cornish.

(10) The two defendants were apprehended in a blue Mustang approximately one-half hour after the breaking and entering, only four miles therefrom.

(11) The jury could conclude that the gloves found in the front seat of the automobile had been stolen incident to the alleged breaking and entering.

■ All of these circumstances combined to present a factual issue for the jury's resolution. We cannot say that the verdicts lacked probative support.

The entry is:

Appeals denied.

All Justices concurring.