**STATE of Maine**

**v.**

**Gregory GAGNE.**

Supreme Judicial Court of Maine.

July 21, 1976.

Donald H. Marden, County Atty., Joseph M. Jabar, Dist. Atty., Robert S. Raymond, Asst. Atty. Gen., Fernand Martineau, Law Student Intern, Augusta, for plaintiff.

Alan C. Sherman, Waterville, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

DELAHANTY, Justice.

A Superior Court (Kennebec County) jury found Gregory Gagne guilty of armed assault and battery [1] and assault with intent to kill by one armed with a dangerous weapon [2] in connection with an incident which took place in Augusta on Christmas Eve in 1973. The presiding Justice sentenced Gagne to serve two concurrent terms at State Prison of not less than ten nor more than twenty years. The defendant has appealed both convictions to this Court.

We deny the appeal.

The jury could have found these facts:

At approximately 6:00 p.m. on December 24, 1973, Frederick Larrabee locked the door of his fish market ("Augusta Sea Food") on North Belfast Avenue in Augusta and, accompanied by two acquaintances, William and Ernest O'Conner, turned to walk to his truck which was parked along one side of the building. Larrabee had the fruits of the day's business—including over $5,000 in cash—on his person. Larrabee and Ernest O'Conner reached the truck first and seated themselves in the driver's and passenger's seats, respectively. As William O'Conner prepared to enter the vehicle, he noticed a man, subsequently identified as Gregory Gagne, emerge from behind a service station across the street and run quickly in the direction of the truck with one hand extended toward the truck. Sensing trouble, William O'Conner prudently secreted himself in some conveniently-situated bushes. When the man whom William O'Conner had observed, reached the truck, he swung open the door on the passenger's side, warned Ernest O'Connor to mind his own business, and pointed a handgun directly at Larrabee. Larrabee leaped from the truck and attempted to flee. After he had travelled a short distance, he slipped on some ice. When he arose, he was once again face-to-face with the man with the gun. As Larrabee turned to run in the opposite direction, he was shot in the left side of his back and fell to the ground. The bullet

---

1. 17 M.R.S.A. § 201–A.

2. 17 M.R.S.A. § 2656 (as amended, 1971).

penetrated the victim's body and exited through his chest. When Larrabee got up, his assailant had vanished. The victim managed to make his way back to the fish market, pick up the phone and request an ambulance before losing consciousness.

Several hours before the above-described events occurred, Gagne had made a remark in the presence of several of his cohorts to the effect that "if he pulled an armed robbery and somebody didn't give up the money, . . . he would blow their chest off, or put a hole in their chest, or something."

On the evening of December 26, 1973—two days after the incident at Augusta Sea Food occurred—Gagne was heard by two of his colleagues to admit that he was the individual who had shot Larrabee.

The defendant was separately indicted for armed assault and battery, assault with intent to kill by one armed with a dangerous weapon, and "attempted armed robbery." The latter indictment was dismissed on the defendant's motion during the course of the trial after the court brought to defense counsel's attention the fact that such indictment was generally vague.

We may now turn to the several points of appeal raised by the appellant.[3]

### I.

Before one Gerald Barber, a witness for the State, took the stand, the defendant's counsel notified the presiding Justice that Barber would testify as to an incriminating remark allegedly made by the defendant on the afternoon of December 24, shortly before the shooting took place, and apparently requested that the court conduct a hearing, out of the presence of the jury, to determine the admissibility of such

testimony.[4] The Justice declined to adopt this procedure, stating "I cannot see any benefit to be gained by having this testimony stated to myself in the absence of the jury ·. . .." There then followed this colloquy between defense counsel and the court:

MR. DAVIAU: I am protected on the record as far as my objection is concerned?

THE COURT: Yes. Your objection is noted, that you object to this testimony, and when we come to it, too, just rely on what you have been saying. You just get up and make an objection at that time, that this is the particular testimony you would like to object to and, of course, I will have a chance to hear exactly what was said, which may be a little different than what I have gotten in conference in chambers, and I will rule on it then.

On direct examination of Barber by the State, this exchange took place:

MR. MARDEN: And whether or not on that day, the afternoon of the 24th, you had any discussion with [the defendant] in regard to armed robberies?

MR. DAVIAU: Objection, for the record.

THE COURT: The objection is overruled and you may answer.

THE WITNESS: Yes, I did.

MR. MARDEN: And what was that discussion? Where were you at that time?

THE WITNESS: We were leaving Nielson's Sporting Goods Store. We were just pulling out actually. He was talking about, talking to every-

---

3. While we have revised the format of the defendant's appeal to some extent, our opinion discusses all the issues identified by the appellant.

4. The record does not disclose why defense counsel was of the opinion that such a hearing was necessary.

body in the car in general, that if he pulled an armed robbery and somebody didn't give up the money, he said he would blow their chest off, or put a hole in their chest, or something.

The appellant has in shotgun fashion presented us with a variety of reasons why this testimony by Barber ought to have been excluded. We need only respond that we have considered the defendant's arguments and find each and every one to be without merit.

As a general matter, "[E]vidence of antecedent threats is admissible when they are directed at the victim for whose assault the defendant is being prosecuted or at a class to which the victim belongs." *State v. Eaton*, Me., 309 A.2d 334, 338 (1973). Insofar as it was a necessary part of the State's case to prove Gagne's intent at the time he committed the acts of which he stood accused, Barber's testimony as to the threatening statement made by the defendant shortly before the shooting was pertinent to the defendant's subsequent intent.[5] There was clearly a "close logical connection," *Eaton*, supra, between the threat made by Gagne and the offenses for which he was on trial.

The admissibility of this evidence ultimately raises a question of relevancy. *Eaton*, supra. The relevancy of evidence is a determination which is for good reason left to the discretion of the presiding Justice. *State v. Westphal*, Me., 349 A.2d 168, 171 (1975). The Justice here did not abuse his discretion by permitting Barber to testify as to the defendant's antecedent threat.

II.

Gerald Barber testified on direct examination that on December 26, 1973, Gagne admitted to him that he had shot Larrabee.

During cross-examination by the defense, the witness was asked, "Do you recall when you first told the police about this?" This exchange ensued:

THE WITNESS: Yes, I believe I do.

MR. DAVIAU: All right.

THE WITNESS: Do you want to hear when it was?

MR. DAVIAU: Yes.

THE WITNESS: I believe the first time I told them was the day I took a polygraph test at the State Police Barracks.

Defense counsel moved for a mistrial at this juncture, which motion was denied by the presiding Justice with this comment:

The Jury will disregard the statement made by the witness concerning the taking of a polygraph test, and we don't know what it was about, whether it concerned something else or what, so I don't think it means a mistrial.

The defendant argues that his motion for a mistrial should have been granted. Our inquiry, of course, is limited to whether the Justice below abused his discretion in denying the motion. *State v. Kelley*, Me., 357 A.2d 890, 898 (1976); *State v. Gagne*, Me., 349 A.2d 193, 198 (1975). We find no abuse of judicial discretion in the denial of the instant motion.

The defendant's position seems to be that he should automatically have been granted a mistrial upon Barber's mention that he had taken a polygraph examination. We decline to adopt such a mechanical approach. While this Court has taken a firm stand against the admission into evidence of *results* of lie detector tests, *State v. Mower*, Me., 314 A.2d 840 (1974), we have not gone so far as to hold that a defendant

5. In his charge, the presiding Justice specifically cautioned the jury that they were to consider Gagne's antecedent threat only in regard to his intent at the time of the shooting.

be awarded a new trial merely because a witness for the State refers to the fact that he has taken such a test. See *State v. Gagne,* Me., 343 A.2d 186, 190–92 (1975).

Barber simply stated that at some time prior to the trial he had taken a lie detector test. There was no suggestion, as the presiding Justice quickly pointed out to the jury, that the polygraph examination which was administered to Barber bore any relation whatsoever to the instant case. Nor did Barber indicate whether he had "passed" or "failed" the test. In these circumstances, it seems to us that the possibility that the defendant was prejudiced by the reference to the polygraph examination is minimal. In any event, "The presiding Justice was present and could better judge whether the incident would be likely to adversely affect the defendant than may this Court from the cold stark pages of the record or the assertions of counsel by way of oral argument." *Gagne,* supra, 349 A.2d at 198.

Finally, and although we would sustain the presiding Justice's denial of the motion for a mistrial even if Barber's mention of the lie detector test were inadvertent, we cannot overlook the distinct impression which emerges from the record that the witness's reference was "invited" by the defense. The record is clear that the defense had been informed prior to trial that Barber had been administered a polygraph examination. The context in which the reference was made suggests that Gagne's counsel knew all too well what answer to expect when he asked Barber to relate the circumstances under which he had informed the police of Gagne's statement that he shot Larrabee.

The motion for a mistrial was properly denied.

## III.

The defendant claims that he was prejudiced by the presence of the "attempted armed robbery" indictment which was dismissed during the trial. This contention is frivolous.

The record shows, as we have noted, that Gagne was indicted for armed assault and battery, assault with intent to kill by one armed with a dangerous weapon, and "attempted armed robbery." The defendant sought no relief from prejudicial joinder prior to trial by making an appropriate motion pursuant to M.R.Crim.P. 14. After the "attempted armed robbery" indictment was dismissed in response to a motion by the defendant pursuant to M.R. Crim.P. 12(b)(2), the presiding Justice made the following explanation to the jury:

> You will remember yesterday we started trying three cases at the same time, consolidated for trial. Now there are only two of those cases left for us to continue presenting for your consideration—the charge of assault with intent to kill and the charge of armed assault and battery. Those two charges are still in front of us for your consideration. The other charge that had been consolidated with those two matters, and that would be the one we were handling under the heading of attempted armed robbery, although the reading of it was quite different from that. That we have had to dismiss. The complaint itself was not specific enough to allege any one of several statutes that are very similar, and because of that it would be improper to continue with that charge at this time, and so a motion to dismiss was granted and that matter is not in front of you any more.

The defendant's theory is that he was prejudiced because, before the dismissal of the defective indictment, the State introduced evidence purporting to show that Gagne was guilty of an attempted armed robbery. This evidence, the appellant reasons, tainted the guilty verdicts subsequently returned on the other two indictments. A reading of the record makes clear, however, that the State introduced no evidence under the "attempted armed robbery" in-

dictment which was not also admissible under the indictments charging Gagne with armed assault and battery and assault with intent to kill by one armed with a dangerous weapon. We think that the court's explanation was entirely adequate to protect the defendant's rights, and his assertion of prejudice is rejected.

## IV.

The presiding Justice charged the jury with finding the defendant either guilty or not guilty of armed assault and battery and either guilty or not guilty of assault with intent to kill by one armed with a dangerous weapon. The defendant made no objection to the court's charge as he had a right to do under M.R.Crim.P. 30(b). Nevertheless, he now maintains that the two offenses of which he was convicted are "duplications" and that the jury should not have been permitted to find him guilty of both. In light of the appellant's failure to comply with Rule 30(b), we restrict our review to whether this belatedly asserted error was an "obvious error" affecting "substantial rights" of the defendant. M.R.Crim.P. 52(b); *Gagne,* supra, 349 A.2d at 197.

A reading of the court's charge leaves no question but that each of the guilty verdicts was predicated on a finding by the jury that Gagne had committed the *single act* of shooting Larrabee.[6] This itself is unobjectionable, however, in view of the well-established principle that "[T]he law permits one matrix of facts to generate, in terms of its legal consequences, more than one criminal offense." *Fuller v. State,* Me., 282 A.2d 848, 852 (1971). If the same acts constitute a violation of two different statutes, but the two offenses are analytically distinct, such that a person who commits one of the offenses does not also *necessarily* commit the other,

"[T]he offenses are still different though the acts are the same, and the perpetrator of the acts may be punished twice, once for each offense." *State v. Jellison,* 104 Me. 281, 284, 71 A. 716, 718 (1908).

If, by committing one offense, a person *necessarily* also commits another offense, the latter is a lesser included offense of the former. *State v. Leeman,* Me., 291 A.2d 709, 711 (1972). Thus, we have recently held that assault and battery is a lesser included offense of manslaughter, on the theory that all of the constituent elements of the offense of assault and battery are included within the offense of manslaughter. *State v. Bowden,* Me., 342 A.2d 281, 285–86 (1975). Similarly, assault is a lesser included offense of assault and battery. *State v. Pinnette,* Me., 340 A.2d 17, 25 (1975); *Williams v. State,* Me., 276 A.2d 601, 603 (1971).

The question which confronts us in the instant case, then, is this: is either armed assault and battery, or assault with intent to kill by one armed with a dangerous weapon, a lesser included offense of the other? An affirmative answer would require that Gagne's conviction of whichever of the two offenses we deemed to be the "lesser" be set aside.

It is appropriate at this point that we set out the relevant language of the statutes with which we are concerned and consider in some detail the elements of the offenses of armed assault and battery and assault with intent to kill by one armed with a dangerous weapon.

17 M.R.S.A. § 201–A reads, in pertinent part, as follows:

Whoever, if armed with a firearm, unlawfully attempts to strike, hit, touch or do any violence to another, however small, in a wanton, willful or angry or insulting manner having an intention and

---

6. This is so even though, as the court instructed the jury, proof of the fact that the bullet fired by Gagne actually struck Larrabee was immaterial, as far as the charge of assault with intent to kill by one armed with a dangerous weapon is concerned.

existing ability to do some violence to such person, is guilty of an armed assault. If such attempt is carried into effect, he is guilty of an armed assault and battery.

■ In order to warrant a conviction of *armed assault and battery*, the evidence must establish, beyond a reasonable doubt, (1) that the defendant was armed with a firearm; (2) that he struck, hit, touched or did some violence to another in a wanton, willful or angry or insulting manner; and (3) that he had an intention and existing ability to do some violence to his victim.

■ 17 M.R.S.A. § 2656 states in part that

Whoever assaults another with intent to murder or kill, if armed with a dangerous weapon, shall be punished by imprisonment for not less than 2 nor more than 25 years.

A defendant may be convicted of *assault with intent to kill by one armed with a dangerous weapon* if the evidence shows, beyond a reasonable doubt, (1) that he committed an assault on another person; (2) that he intended to kill his victim, and (3) that he was armed with a dangerous weapon.

*Is armed assault and battery a lesser included offense of assault with intent to kill by one armed with a dangerous weapon?*

■ This question requires only a brief negative answer. Even assuming *arguendo* that all the other elements of the offense of armed assault and battery are included in the offense of assault with intent to kill by one armed with a dangerous weapon, armed assault and battery plainly contemplates an element which assault with intent to kill by one armed with a dangerous weapon does not, namely, a battery. A person may commit the offense of assault with intent to kill by one armed with a

dangerous weapon without necessarily committing a battery. Since armed assault and battery therefore contains at least one element not included in assault with intent to kill by one armed with a dangerous weapon, the former is not a lesser included offense of the latter. *Bowden*, supra, 342 A.2d at 285; *Bessey v. State*, Me., 297 A. 2d 373, 375 (1972); *Leeman*, supra, 291 A.2d at 711.

*Is assault with intent to kill by one armed with a dangerous weapon a lesser included offense of armed assault and battery?*

■ The response to this question parallels the answer to the previous one. Even if we are to assume for the purpose of this discussion that all the other elements of the offense of assault with intent to kill by one armed with a dangerous weapon are included within the offense of armed assault and battery, assault with intent to kill by one armed with a dangerous weapon includes an element which armed assault and battery clearly does not: an intention to kill. A person who commits the offense of armed assault and battery does not necessarily intend to kill his victim. This being the case, it follows that assault with intent to kill by one armed with a dangerous weapon is not a lesser included offense of armed assault and battery. *Bowden, Bessey, Leeman*, supra.

We conclude that since neither armed assault and battery nor assault with intent to kill by one armed with a dangerous weapon is a lesser included offense of the other, they are distinct offenses, and the presiding Justice did not err by instructing the jury that they could find the defendant guilty of both of these crimes, based on Gagne's single act of shooting Larrabee. *Jellison*, supra, 104 Me. at 281, 71 A. at 718.

## V.

The defendant having moved for a judgment of acquittal at the close of all the ev-

idence, the issue of the sufficiency of the evidence to support the guilty verdicts is properly before us. *Kelley,* supra, 357 A. 2d at 892; *State v. Burnham,* Me., 350 A. 2d 577, 582 (1976).

We have carefully reviewed the evidence and conclude that the guilty verdicts must stand. As for the appellant's contention that there was no evidence that he possessed the "intent to . . . kill" necessary for a conviction under 17 M.R. S.A. § 2656, we simply refer him to *Pinnette,* supra, 340 A.2d at 21, in which we explained that the finder of fact may infer a specific intent to kill "from the circumstances where a defendant acts in reckless or wanton disregard for the safety of others." The jury was completely justified in drawing such an inference in this case. Nor do we see any inherent inconsistency, as the appellant urges that we do, between the two guilty verdicts. The jury was warranted in concluding that, when Gagne shot Larrabee, he had the "intention . . . to do some violence" required for a conviction under 17 M.R.S.A. § 201–A as well as the "intent . . . to kill" necessary for a conviction under 17 M.R.S.A. § 2656. Since an "intent . . . to kill" is manifestly encompassed within the concept of an "intention . . . to do some violence," these can hardly be characterized as mutually exclusive states of mind.

The appellant's argument that his motion for a judgment of acquittal should have been granted raises no other issues which merit discussion. The evidence was sufficient to support the jury verdicts, and the motion for a judgment of acquittal was correctly denied.

The entry is:

Appeal denied.

WEATHERBEE, J., sat at oral argument and participated in conference but died before this opinion was adopted.

All Justices concurring.