STATE of Maine

v.

Edward LARRABEE.

Supreme Judicial Court of Maine.

Sept. 8, 1977.

Thomas A. Berry, Asst. Dist. Atty., Wiscasset, for plaintiff.

Fitzgerald, Donovan & Conley, P. A. by Theodore K. Hoch, Bath, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, DELAHANTY and GODFREY, JJ.

DELAHANTY, Justice.

The defendant, Edward Larrabee, appeals from a Lincoln County Superior Court jury verdict which found him guilty of breaking, entering and larceny in the nighttime.[1] We deny the appeal.

During the early morning hours of July 6, 1975, Kevin Brochu and Kenneth Stinson broke into the Dodge Inn's gift shop and stole *jewelry* belonging to Mrs. Stanley Dodge. The defendant did not participate in this crime. A few hours later, Brochu, Stinson, and the defendant returned to the Dodge Inn. The defendant drove and waited in the car while Brochu and Stinson broke into the Inn's restaurant and stole *money* belonging to Mr. and Mrs. Stanley Dodge. The defendant was subsequently indicted for stealing both the *jewelry and the money* from the Dodge Inn. Prior to trial, the defendant filed a timely motion for a bill of particulars essentially seeking to determine whether he was being charged with breaking into the gift shop and/or the restaurant. The presiding Justice denied the motion but ruled that in order to convict the defendant, the State would have to prove that the defendant committed "both larcenies."[2] On the day of the trial, but before the jury was impaneled, the State made a "motion to strike" the language from the indictment that charged the defendant with stealing the jewelry.[3] Over the objection of the defendant, the court granted the motion. Thereafter, the defendant renewed his motion for a bill of particulars which was again denied. The jury subsequently convicted the defendant of breaking and entering the restaurant

1. 17 M.R.S.A. § 2103.

2. Since there was never an objection to this ruling, we have no occasion to review it on appeal.

3. The indictment charged that the defendant broke into the Dodge Inn
and therein did, with intent to deprive permanently Mr. and Mrs. Stanley Dodge of their property, steal, take and carry away a quantity of jewelry the property of Mrs. Stanley Dodge, of a value in excess of one dollar ($1.00) and a quantity of currency in the form of change, the property of Mr. and Mrs. Stanley Dodge.
The "motion to strike" excluded from the indictment "a quantity of jewelry, the property of Mrs. Stanley Dodge, of a value in excess of one [dollar] ($1.00) and."

and stealing the money. From this conviction, the defendant has appealed. He alleges that the trial court incorrectly: 1) granted the State's "motion to strike" certain language from the indictment; 2) denied the defendant's motion for a bill of particulars; and 3) sustained the State's objection to a question that the defendant asked on cross-examination of an accomplice testifying for the State. We consider these allegations *seriatim*.

I

We note initially that the State's "motion to strike" is a misnomer since only a defendant is permitted to make such a motion. M.R.Crim.P. 7(d). The defendant alleges that the State's motion should be considered an amendment to the indictment. He asserts that the State's action in striking the language that charged him with stealing the jewelry was an impermissible substantive amendment. We disagree.

 It is beyond peradventure that the State can amend an indictment as to form but would have to resubmit the indictment to the grand jury if it desired a substantive change. *State v. Child,* 158 Me. 242, 246, 182 A.2d 675, 678 (1962). A substantive amendment is one that changes the nature or grade of the offense charged. *State v. Mottram,* 155 Me. 394, 400, 156 A.2d 383, 387 (1959). If, however, the change in an indictment does not alter any fact which must be proved to make the act charged a crime, the amendment is formal. *State v. Grant,* Me., 266 A.2d 232, 234 (1970). In the instant case, the indictment, both before and after the amendment, contained every element necessary to charge the defendant with a nighttime breaking, entering and larceny of the money. The amendment's sole purpose was to remove certain excess language from the indictment. It did not charge the defendant with a crime for which he was not indicted. In *State v. Pinnette,* Me., 340 A.2d 17 (1975), the defendant was indicted for assault and battery of a high and aggravated nature. The State struck the word "battery" from the indictment. There we held the amendment

permissible since the remaining charge of assault was necessarily included in the initial charge of assault and battery. Here it is evident that the defendant was always charged with the larceny of the money. Our reasoning in *Pinnette* controls the case at bar.

> Where a dismissal of a portion of an indictment does away with excessive charges and does not alter the nature of the criminal charges against the defendant, the partial dismissal is not an amendment of the indictment such as would require the indictment to be resubmitted to the grand jury. *Id.* at 24.

II

The defendant alleges that the court abused its discretion in denying his motion for a bill of particulars. He asserts that the indictment contained a latent ambiguity because it was not clear for which larceny he was to be tried. While the ambiguity was temporarily resolved when the trial court ruled that the State would have "to prove both larcenies," the defendant claims the problem reappeared when the presiding Justice granted the State's motion to amend.

 The purpose of a bill of particulars is to enable the defendant to prepare an adequate defense, to avoid prejudicial surprise at trial, and to establish a record upon which to plead prior jeopardy if occasion demands. *State v. Davenport,* Me., 326 A.2d 1, 9 (1974); *State v. Littlefield,* Me., 219 A.2d 755, 757 (1966). Its grant or denial rests within the sound discretion of the trial judge. *State v. Hume,* 146 Me. 129, 138, 78 A.2d 496, 502 (1951). To determine whether a bill of particulars should have been granted, it is necessary to determine the facts known to the defendant. In examining the record, we are mindful of the admonition that the defendant is presumed innocent and is therefore ignorant of the facts upon which the pleadings are based. *United States v. Tucker,* 262 F.Supp. 305, 307 (S.D.N.Y.1966); *United States v. Smith,* 16 F.R.D. 372, 374 (W.D.Mo.1954).

At the hearing on the motion for a bill of particulars, the defense attorney stated that there were two separate larcenies, one into the restaurant and the other into the gift shop. He was aware that the money was taken during one break, and the jewelry during the other. The State informed him that the jewelry was procured from the gift shop and the money was stolen from the restaurant. The only fact of which he was ignorant was whether the defendant was charged with one or both of the larcenies. This ambiguity was resolved before trial when the district attorney amended the indictment to exclude the theft of the jewelry. At this point it was perfectly clear that the defendant was charged only with the theft of the money from the restaurant.

■■■ That the defendant came upon this knowledge as a result of an amendment to the indictment is irrelevant, for there is nothing talismanic about a bill of particulars. Thus, when a defendant learns of the essential facts upon which an indictment is based at a suppression hearing, *United States v. Mazzella,* 295 F.Supp. 1033 (S.D.N.Y.1969), a preliminary hearing, *State v. Martin,* 175 Kan. 373, 265 P.2d 297 (1954), or because of the prosecutor's oral statement of the case, *Demetree v. United States,* 207 F.2d 892 (5th Cir. 1953), his motion for a bill of particulars need not be granted. In this case, the defendant acquired all of the necessary facts and particulars upon which he was to be tried when the State amended the indictment.[4] The need for a bill of particulars was thereby obviated and its denial clearly was not an abuse of discretion.

### III

Stinson, an accomplice of the defendant, was a State's witness in the case. During cross-examination, the defendant asked Stinson: "Do you know what the maximum punishment was, had you been convicted of that charge of breaking, entering, and larceny?" The State's objection to this question was sustained. The defendant alleges that in sustaining this objection the court erred because it impinged upon his ability to effectively cross-examine the witness concerning the benefit he would receive in testifying favorably for the State.

■■■ Cross-examination is a fundamental right of the defendant. We have been particularly sensitive to the defendant's right of cross-examining an accomplice concerning any "deal" entered into between the accomplice and the State. Great latitude is permitted in such cases to show the bias of the witness. *State v. Brown,* Me., 321 A.2d 478, 482 (1974). In *Brown,* we stated that

> it is proper to allow cross-examination not only to the existence of the arrangement, but also to the extent of the benefit which the witness is likely to obtain as a result of his co-operating testimony. *Id.* at 483.

In the instant case, absent any countervailing policies, it would have been proper for the defendant to inquire as to the maximum sentence that the witness could have received because it is probative of the extent of the benefit that he was likely to obtain.

■■■ However, it has long been the rule that in determining the guilt of an accused, the jury should not consider or be influenced by the punishment that the defendant would receive if he were convicted. *State v. Park,* 159 Me. 328, 336, 193 A.2d 1, 5 (1963). If the jury knew the maximum possible sentence, it could adversely affect its ability to dispassionately consider the facts presented during trial. It is for this reason that the issue of punishment is considered to be a question of law and within the province of the court.

■■■ In this case, Stinson could have been convicted of the same crime for which the defendant was indicted. Had he been permitted to state the maximum sentence that he could have received, the jury would have been aware of the defendant's possible punishment. It is true that the defendant's

---

4. We express no opinion as to whether it would have been an abuse of discretion to deny a bill of particulars if the indictment had not been amended.

question merely asked if Stinson knew the maximum penalty. While it technically required only an affirmative or negative response, it clearly invited a statement as to the length of the possible sentence. In light of the strong policy reasons against informing the jury of the defendant's disposition, it was more reasonable to exclude the question than to permit a response which could have been highly prejudicial. M.R.Evid. 403. Nor would a limiting instruction have protected the salutary purposes of the rule.

██ Even though the court was correct in sustaining the objection, we must confront the issue of whether this restriction on the defendant's ability to cross-examine the witness denied the defendant his sixth amendment right of confrontation. See *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

In *State v. Carey,* Me., 290 A.2d 839 (1972), the defendant attempted to impeach a juvenile witness by showing that his testimony, which was favorable to the State, may have been influenced by the threat of probation revocation. We held that the defendant's right of cross-examination was not denied, even though the trial court excluded the witness' juvenile record from evidence, since he otherwise has a full opportunity to explore the issue of bias. In *State v. Brown,* Me., 321 A.2d 478 (1974), an accomplice entered into a plea bargaining agreement with the State. The trial court restricted the defendant's right to cross-examine the accomplice concerning the underlying crimes which formed the basis of the agreement. In affirming the judgment, we stated:

The issue of bias resulting from "dealing" between the prosecution and the witness was substantially explored on cross-examination. The inquiry was conditioned only by the constitutional right of the witness to refrain from discussing the specifics of prior criminal activity. The Defendant's constitutional right to confront and impeach the witnesses against him does not guarantee unrestricted admission into evidence of all material of an impeaching nature.[5] *Id.* at 485 (citations omitted).

An examination of the record reveals that except for this one question, the defendant fully cross-examined the accomplice as to the extent of the *quid pro quo* received for his expected testimony. His right to confrontation was therefore not impermissibly curtailed.

The entry shall be: Appeal denied.

ARCHIBALD, J., did not sit.

All Justices concurring.

5. In *State v. Brown, supra,* the defendant's right to cross-examine was restricted by the witness' fifth amendment privilege against self-incrimination. In *State v. Carey, supra,* cross-examination was conditioned upon a statutory provision. In the instant case it is impinged by a common law rule. For purposes of this inquiry, we see no substantial difference between a constitutional provision, a statutory prohibition, and an important common law rule.

All of these cases are readily distinguishable from *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct.

1105, 39 L.Ed.2d 347 (1974). In *Davis* the United States Supreme Court found a sixth amendment violation where the defendant was virtually prohibited from inquiring into the witness' bias. In each of our cases, the record indicates that the defendant fulfilled the *Davis* requirement of being able "to expose to the jury the facts from which the jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *Id.* at 318, 94 S.Ct. at 1111, 39 L.Ed.2d at 355.